615 So.2d 1134 (1992)
Byron De La BECKWITH
v.
STATE of Mississippi.
No. 91-IA-1207.
Supreme Court of Mississippi.
December 16, 1992.
Rehearing Denied April 22, 1993.
*1135 Merrida Coxwell, Stanfield Carmody & Coxwell, Jim Kitchens, Kitchens & Ellis, Jackson, for appellant.
Edward J. Peters, Hinds County Dist. Atty., Bobby B. DeLaughter, Asst. Dist. Atty., Jackson, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Medgar Evers, a black civil rights activist and leader in the turbulent 1950s-1960s civil rights struggles, was murdered at his home in Jackson June 12, 1963. Byron De La Beckwith, a vocal pro-segregationist and white supremacist in this State, was arrested June 23 and indicted for Evers' murder at the July, 1963, term of the grand jury of Hinds County. He stood trial in February, 1964, and following a hung jury, a mistrial was ordered by the circuit judge February 7. He again stood trial in April, and following another hung jury, the circuit judge declared a mistrial April 17, 1964. Until his second trial, Beckwith had been incarcerated without bail.
Following his second trial Beckwith was released on $10,000 bail. He ran a markedly unsuccessful campaign for Lieutenant Governor in 1967. The district attorney prosecuting the case did not seek re-election, and his successor on March 10, 1969, moved the court to enter a nolle prosequi of the indictment. The three circuit judges of the Seventh Circuit Court District signed the order granting a nolle prosequi. There was no objection by the defense to the entry of the nolle prosequi.
Over the years this case has received considerable public attention by the press, but no further effort was made by the State to initiate criminal proceedings against Beckwith until the December, 1990, term of the Hinds County grand jury when he again was indicted for murder. Beckwith, then living in Tennessee, following an extradition contest in the Tennessee courts, was extradited to Mississippi and incarcerated in a Hinds County jail.
His request for bail was denied by the circuit judge, and affirmed on appeal by this Court's order of March 25, 1992. He has been in jail in this State since October, 1991.
In April 1992, he sought dismissal of the indictment against him on three constitutional grounds. The circuit court on August 4, 1992, denied his motion, and Beckwith then petitioned this Court for an interlocutory appeal, pursuant to our Rule 5, Mississippi Supreme Court Rules. This Court by August 26, 1992, Order granted an interlocutory appeal.[1]
*1136 There should be no necessity to emphasize the obvious: This case is not before us from a final conviction. It is before us on an interlocutory appeal in which Beckwith claims a Constitutional right not to even be put to trial, seeking this Court to intervene in circuit court criminal trial proceedings instituted by the State of Mississippi, stop them, and order his discharge.
This Court does not equate the right not to be wrongfully convicted as somehow giving a defendant a right not to be put to trial at all. We adhere to the wisdom stated by the United States Supreme Court in Cobbledick v. United States, 309 U.S. 323 at 325, 60 S.Ct. 540 at 541, 84 L.Ed. 783 at 785 (1940):
An accused is entitled to scrupulous observance of constitutional safeguards. But encouragement of delay is fatal to the vindication of the criminal law. Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship. The correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal. (Emphasis added.)
On his appeal Beckwith seeks the dismissal of the indictment and his discharge from custody on three grounds:
(1) Denial of a speedy trial. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed... ." Amendment 6, U.S. Constitution. "In all criminal prosecutions the accused shall have a right to a ... speedy and public trial by an impartial jury of the county where the offense was committed... ." Art. 3, § 26, Mississippi Constitution.
(2) Denial of due process. "No person shall be ... deprived of life, liberty or property, without due process of law... ." Amendment 5, U.S. Constitution.
(3) Double jeopardy. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb... ." Amendment 5, U.S. Constitution.
We find much wisdom in the principles enunciated in the Federal Courts on questions such as those raised here, and today hold that in applying Rule 5 to any attempted interlocutory appeal in which a defendant seeks to have all criminal charges against him dismissed and for his final discharge, we will adhere to the same principles and criteria of the Federal Courts.
The interlocutory appeal granted Beckwith in this case was not based upon any Constitutional mandate or statute giving him any such right, but solely upon a rule promulgated by this Court. While Beckwith's indictment, arrest and anticipated trial may raise serious and troubling Constitutional questions, he clearly has no Constitutional or statutory right to an interlocutory appeal.
After mature consideration we have concluded that the first two grounds asserted by Beckwith afford no basis for an interlocutory appeal, and decline to address them. We do address the final ground and find it without merit. Our reasons follow.

I. FEDERAL DECISIONS
The principles and criteria adhered to in the Federal courts are illustrated in three U.S. Supreme Court decisions: Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); and Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).
In Abney v. United States, the Court granted certiorari to specifically address the question of whether or not an appeal would be permitted from a district court *1137 order denying a defense motion to dismiss criminal charges on the basis that the defendant's double jeopardy rights under the Fifth Amendment would be violated by a second trial. The Court first analyzed why no appeals are allowed other than those from a final judgment of conviction as authorized by 28 U.S.C.S. § 1291.[2]
We approach the threshold appealability question with two principles in mind. First, it is well settled that there is no constitutional right to an appeal. McKane v Durston, 153 US 684, 38 L Ed 867, 14 S Ct 913 (1894). Indeed, for a century after this Court was established, no appeal as of right existed in criminal cases, and, as a result, appellate review of criminal convictions was rarely allowed. As the Court described this period in Reetz v Michigan, 188 US 505, 47 L Ed 563, 23 S Ct 390 (1903):
"[T]rials under the Federal practice for even the gravest offences ended in the trial court, except in cases where two judges were present and certified a question of law to this court." Id., at 508, 47 L Ed 563, 23 S Ct 390 [at 392].
The right of appeal, as we presently know it in criminal cases, is purely a creature of statute; in order to exercise that statutory right of appeal one must come within the terms of the applicable statute  in this case, 28 USC § 1291 [28 USCS § 1291].
Second, since appeals of right have been authorized by Congress in criminal cases, as in civil cases, there has been a firm congressional policy against interlocutory or "piecemeal" appeals and courts have consistently given effect to that policy. Finality of judgment has been required as a predicate for federal appellate jurisdiction.
"The general principle of federal appellate jurisdiction, derived from the common law and enacted by the First Congress, requires that review of nisi prius judgment." DiBella v United States, 369 US 121, 124, 7 L Ed 2d 614, 82 S Ct 654 [656] (1962).

Accord, Cobbledick v United States, 309 US 323, 324-326, 84 L Ed 783, 60 S Ct 540 [541-542] (1940). This principle is currently embodied in 28 USC § 1291 [28 USCS § 1291] which grants the federal courts of appeals jurisdiction to review "all final decisions of the district courts," both civil and criminal. Adherence to this rule of finality has been particularly stringent in criminal prosecutions because "the delays and disruptions attendant upon intermediate appeal," which the rule is designed to avoid, "are especially inimical to the effective and fair administration of the criminal law." DiBella, supra, [369 U.S.] at 126, 7 L Ed 2d 614, 82 S Ct 654 [658]. Accord, Cobbledick, supra, [309 U.S.] at 324-326, 84 L Ed 783, 60 S Ct 540 [541-542]. (Footnotes omitted; brackets original.)
Abney v. United States, 431 U.S. at 656-657, 97 S.Ct. at 2038-2039, 52 L.Ed.2d at 657-658.
The Court then distinguished an appeal from an order overruling a motion to dismiss an indictment on the ground of double jeopardy from other interlocutory orders in a district court. A motion to dismiss on the ground of double jeopardy involved a right totally independent and collateral to the issues in the trial,[3] and was a "final decision" as contemplated by § 1291.
*1138 The Court noted that while a pretrial denial of a motion to dismiss an indictment on double jeopardy grounds "is obviously not `final' in the sense that it terminates the criminal proceedings," it nonetheless fell "within the so-called `collateral order' exception to the final-judgment rule first announced in Cohen v. Beneficial Industrial Loan," and was a "final decision" within the meaning of § 1291. Abney v. United States, 431 U.S. at 657, 97 S.Ct. at 2039, 52 L.Ed.2d at 658-659. The Court observed that the double jeopardy clause protected an accused beyond that of being twice convicted for the same offense, it protected the accused "against being twice put to trial for the same offense." Abney, 431 U.S. at 661, 97 S.Ct. at 2041, 52 L.Ed.2d at 661 (emphasis added.) "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense... ." Abney, 431 U.S. at 661, 97 S.Ct. at 2041, 52 L.Ed.2d at 661 (quoting Green v. United States, 355 U.S. 184, 187-188, 78 S.Ct. 221, 223-224, 2 L.Ed.2d 199, 77 Ohio L.Abs. 202, 61 A.L.R.2d 1119 (1957).
The Court then considered the petitioner's appeal on the ground of double jeopardy violation and, finding there was none, affirmed the conviction.
In United States v. MacDonald, the Supreme Court granted certiorari to determine whether a court of appeals could hear an appeal from a district court order denying a defense motion to dismiss on the ground that the defendant's Sixth Amendment right to a speedy trial had been violated. United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). The Court found that such claim was not separate from or collateral to the trial itself, and held that courts of appeal lacked jurisdiction to entertain appeals in such instances.
The Court made further observations about speedy trial claims:
This Court frequently has considered the appealability of pretrial orders in criminal cases. [Citations omitted.] Just last Term the Court reiterated that interlocutory or "piecemeal" appeals are disfavored. "Finality of judgment has been required as a predicate for federal appellate jurisdiction." Abney v United States, 431 US, at 656, 52 L Ed 2d 651, 97 S Ct 2034 [2038]. See also DiBella v United States, 369 US, at 124, 7 L Ed 2d 614, 82 S Ct 654 [at 656].
This traditional and basic principle is currently embodied in 28 USC § 1291 [28 USCS § 1291], which grants the federal courts of appeal jurisdiction to review "all final decisions of the district courts," both civil and criminal. The rule of finality has particular force in criminal prosecutions because "encouragement of delay is fatal to the vindication of the criminal law." Cobbledick v United States, 309 US, at 325, 84 L Ed 783, 60 S Ct 540 [at 541]. See also DiBella v United States, 369 US, at 126, 7 L Ed 2d 614, 82 S Ct 654 [at 657].
... .
The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. As is reflected in the decisions of this Court, most speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial.
... .
Even if the degree of prejudice could be accurately measured before trial, a speedy trial claim nonetheless would not be sufficiently independent of the out-come *1139 of the trial to warrant pretrial appellate review. The claim would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof... . The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed.
Relatedly, the order sought to be appealed in this case may not accurately be described, in the sense that the description has been employed, as involving "an important right which would be `lost, probably irreparably,' if review had to await final judgment." [Citations omitted.] ... Unlike the protection afforded by the Double Jeopardy Clause, the Speedy Trial Clause does not, either on its face or according to the decisions of this Court, encompass a "right not to be tried" which must be upheld prior to trial if it is to be enjoyed at all. It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. If the factors outlined in Barker v Wingo, supra [407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)] combine to deprive an accused his right to a speedy trial, that loss, by definition, occurs before trial. Proceeding with the trial does not cause or compound the deprivation already suffered.
Furthermore, in most cases, as noted above, it is difficult to make the careful examination of the constituent elements of the speedy trial claim before trial. Appellate courts would be in no better position than trial courts to vindicate a right that had not yet been shown to have been infringed.
... .
Significantly, this Court has emphasized that one of the principal reasons for its strict adherence to the doctrine of finality in criminal cases is that "[t]he Sixth Amendment guarantees a speedy trial." DiBella v United States, 369 US, at 126, 7 L Ed 2d 614, 82 S Ct 654 [at 658]. Fulfillment of this guarantee would be impossible if every pretrial order were appealable.
... .
In sum, we decline to exacerbate pretrial delay by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain interlocutory appellate review. (Footnotes omitted; brackets original.)
MacDonald, 435 U.S. at 853-863, 98 S.Ct. at 1549-1554, 56 L.Ed.2d at 23-29.
The Supreme Court also rejected the notion that an extraordinary speedy trial claim could afford any basis for an interlocutory appeal.
The Court of Appeals' alternative rationale  that it was the "extraordinary nature" of respondent's claim that merited interlocutory appeal, even though not all speedy trial claims would be so meritorious  is also unpersuasive. "Appeal rights cannot depend on the facts of a particular case." Carroll v United States, 354 US 394, 405, 1 L Ed 2d 1442, 77 S Ct 1332 [1339] (1957). The factual circumstances that underlie a speedy trial claim, however "extraordinary," cannot establish its independent appealability prior to trial. Under the controlling jurisdictional statute, 28 USC § 1291 [28 USAC § 1291], the federal courts of appeals have power to review only "final decisions," a concept that Congress defined "in terms of categories." Carroll v United States, 354 US, at 405, 1 L Ed 2d 1442, 77 S Ct 1332 [at 1339].
United States v. MacDonald, 435 U.S. at 857, n. 6, 98 S.Ct. at 1551, n. 6, 56 L.Ed.2d at 25, n. 5b, 6b, 7b.
In Flanagan v. United States, the Supreme Court granted certiorari to determine whether a court of appeals had jurisdiction to hear an appeal from a district court order which, over defense objection, disqualified a law firm from representing four defendants because of a conflict between their defenses. The petitioners asserted a Sixth Amendment right to assistance of counsel, and of their Fifth Amendment right to due process to present a common defense through joint counsel. *1140 Flanagan, 465 U.S. at 262-263, 104 S.Ct. at 1053-1054, 79 L.Ed.2d 288 at 293. The Court held that the court of appeals lacked jurisdiction to hear the appeal.
The observations and holding of the Court in Flanagan merit repeating in full here:
"Finality as a condition of review is an historic characteristic of federal appellate procedure." Cobbledick v United States, 309 US 323, 324, 84 L Ed 783, 60 S Ct 540 [541] (1940). Thus, the jurisdictional statute applicable to this case limits the jurisdiction of the courts of appeals to appeals from "final decisions of the district courts." 28 USC § 1291 [28 USCS § 1291]. This final judgment rule requires that "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." Firestone Tire & Rubber Co. v Risjord, 449 US [368], at 374, 66 L Ed 2d 571, 101 S Ct 669 [at 673]. In a criminal case the rule prohibits appellate review until conviction and imposition of sentence. Berman v United States, 302 US 211, 212, 82 L Ed 204, 58 S Ct 164 [166] (1937).
The final judgment rule serves several important interests. It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the prejudgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice. Firestone Tire & Rubber Co. v Risjord, supra [449 U.S.] at 374, 66 L Ed 2d 571, 101 S Ct 669 [at 673]. For these reasons, "[t]his Court has long held that the policy of Congress embodied in [§ 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation ... . ." United States v Hollywood Motor Car Co., 458 US 263, 265, 73 L Ed 2d 754, 102 S Ct 3081 [3082] (1982).
The Court has also long held that "this policy is at its strongest in the field of criminal law." Id. More than 40 years ago the Court noted that the reasons for the final judgment rule are "especially compelling in the administration of criminal justice." Cobbledick v United States, supra [309 U.S.] at 325, 84 L Ed 783, 60 S Ct 540 [at 541]. Promptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded.
... .
The importance of the final judgment rule has led the Court to permit departures from the rule "only when observance of it would practically defeat the right to any review at all." Cobbledick v United States, supra, at 324-325, 84 L Ed 783, 60 S Ct 540 [541] (footnote omitted). The Court has allowed a departure only for the "limited category of cases falling with the `collateral order' exception delineated in Cohen. ..." United States v Hollywood Motor Car Co., supra [458 U.S.] at 265, 73 L Ed 2d 754, 102 S Ct 3081 [at 3083]. To come within this "narrow exception," Firestone Tire & Rubber Co. v Risjord, supra [449 U.S.] at 374, 66 L Ed 2d 571, 101 S Ct 669 [673], a trial court order must, at a minimum, meet three conditions. First, it "must conclusively determine the disputed question"; second, it must "resolve an important issue completely separate from the merits of the action"; third, it must "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v Livesay, 437 US 463, 468, 57 L Ed 2d 351, 98 S Ct 2454 [2458] (1978) (footnote omitted).
Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases. The Court has found only three types of pretrial orders in criminal prosecutions to meet the requirements. See United States v Hollywood Motor Car Co., 458 US, at 265, 73 L Ed 2d 754, 102 S Ct 3081 [at 3082]. Each type involves "`an asserted right the legal and practical value of which would be destroyed if it were *1141 not vindicated before trial.'" Id., at 266, 73 L Ed 2d 754, 102 S Ct 3081 [3083] (quoting United States v. MacDonald, supra [435 U.S.] at 860, 56 L Ed 2d 18, 98 S Ct 1547 [at 1552]).
An order denying a motion to reduce bail may be reviewed before trial. The issue is finally resolved and is independent of the issues to be tried, and the order becomes moot if review awaits conviction and sentence. Stack v Boyle, 342 US 1, 96 L Ed 3, 72 S Ct 1 (1951). Orders denying motions to dismiss an indictment on double jeopardy or speech or debate grounds are likewise immediately appealable... . Similarly, the right guaranteed by the Speech or Debate Clause is more than the right not to be convicted for certain legislative activities: it is the right not to "be questioned" about them  that is, not to be tried for them. Helstoski v Meanor, 442 US 500, 61 L Ed 2d 30, 99 S Ct 2445 (1979). Refusals to dismiss an indictment for violation of the Double Jeopardy Clause or of the Speech or Debate Clause, like denials of bail reduction, are truly final and collateral, and the asserted rights in all three cases would be irretrievably lost if review were postponed until trial is completed.
An order disqualifying counsel lacks the critical characteristics that make orders denying bail reduction or refusing to dismiss on double jeopardy or speech or debate grounds immediately appealable. Unlike a request for bail reduction, a constitutional objection to counsel's disqualification is in no danger of becoming moot upon conviction and sentence. Moreover, it cannot be said that the right petitioners assert, whether based on the Due Process Clause of the Fifth Amendment or on the Assistance of Counsel Clause of the Sixth Amendment, is a right not to be tried. Double jeopardy and speech or debate rights are sui generis in this regard. See United States v. MacDonald, 435 US, at 860, n 7, 56 L Ed 2d 18, 98 S Ct 1547 [at 1552, n. 7]. Rather just as the speedy trial right is merely a right not to be convicted at an excessively delayed trial, id., at 860-861, 56 L Ed 2d 18, 98 S Ct 1547 [at 1552-1553], the asserted right not to have joint counsel disqualified is, like virtually all rights of criminal defendants, merely a right not to be convicted in certain circumstances. Unlike a double jeopardy or speech or debate claim, petitioners' claim "would be largely satisfied by an acquittal resulting from the prosecution's failure to carry its burden of proof." Id., at 859, 56 L Ed 2d 18, 98 S Ct 1547 [at 1552]. See also United States v Hollywood Motor Car Co., 458 US [263], at 268, 75 [73] L Ed 2d 754, 102 S Ct 3081 [3084] (vindictive prosecution right fully protected by postconviction review). "Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." Cobbledick v United States, 309 US, at 325, 84 L Ed 783, 60 S Ct 540 [at 541]. See also Roche v Evaporated Milk Assn., 319 US 21, 30, 87 L Ed 1185, 63 S Ct 938 [943] (1943). (Brackets original; parenthesis original; emphasis added; footnotes omitted.)
Flanagan, 465 U.S. at 263-267, 104 S.Ct. at 1053-1056, 79 L.Ed.2d at 293-96.

II. MISSISSIPPI HISTORY
Art. III, § I of the United States Constitution states that "The Judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." (Emphasis added.) Art. 6, § 144 of the Mississippi Constitution states that "The judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this constitution." (Emphasis added.)
Until 1983, Art. 6, § 146 of the Mississippi Constitution read: "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals." By amendment ratified in November, 1983, § 146 was amended. In pertinent part, it now provides: "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically *1142 provided by this Constitution or by general law." (Emphasis added.)
Both the United States and the Mississippi Constitutions are silent on rights to appeal. Clearly, neither gives its Supreme Court any specific right to grant appeals of any kind.
Until 1984 this Court adhered to the same principle of Constitutional law under our Mississippi Constitution as the United States Supreme Court has under the U.S. Constitution, namely: that all rights of appeal, including interlocutory appeals, are purely statutory, that there is no right of appeal in the absence of a statute authorizing it and, as a condition precedent to this Court acquiring jurisdiction, the terms of the appeal statute had to be strictly complied with.[4]
All interlocutory appeals were governed solely by statute. Except as authorized by Miss. Code Ann. § 11-7-213,[5] a statute authorizing an appeal by either party from an order granting a new trial on damages, no interlocutory appeal was ever granted from a circuit court order. Cotton v. Veterans Cab Co., Inc., 344 So.2d 730 (Miss. 1977). Interlocutory appeals from chancery court were governed solely by Miss. Code Ann. § 11-51-7 (Supp. 1992).[6]
The same rule was assiduously followed by this Court in all criminal cases. The right to appeal to this Court in a criminal case was not a common law right, but "strictly a statutory right," and an appeal had to be perfected within the terms of the applicable appeal statute. Miss. Code Ann. § 99-35-101 (Supp. 1992). In the absence of compliance with the statute, we have consistently held that this Court did not have jurisdiction. Cf. Fleming v. State, 553 So.2d 505, 506 (Miss. 1989); Mississippi v. Ridinger, 279 So.2d 618, 620 (Miss. 1973); Cooper v. State, 175 Miss. 718, 168 So. 53 (1936). We likewise held that there could be no appeal to this Court before a final judgment of conviction, absent which we did not have jurisdiction. Jaquith v. Beckwith, 248 Miss. 491, 157 So.2d 403 (1963); Cooper v. State, 175 Miss. 718, 168 So. 53 (1936); Hayden v. State, 81 Miss. 55, 32 So. 922 (1902); Lemly v. State, 69 Miss. 628, 12 So. 559 (1892). In sum, throughout out State's jurisprudence, we adhered to the same principles governing a right of appeal as the United States Supreme Court, namely: there was no Constitutional or common law right of appeal in either civil or criminal cases and any right thereasto had to be given by Legislative enactment.
This State followed the general rule as to interlocutory appeals. For interlocutory appeals in civil cases, see generally 4 C.J.S. Appeal and Error, § 93, et seq.; and in criminal cases, 24 C.J.S. Criminal Law, § 1643, et seq.
Indeed, until State v. Maples, 402 So.2d 350 (Miss. 1981), this Court felt it had no jurisdiction to interfere at all in a trial court proceeding. Our jurisdiction was limited solely to review upon an appeal perfected by statute. Wynne v. Railroad, 105 Miss. 784, 66 So. 411 (1914); Planters Insurance *1143 Co. v. Cramer, 47 Miss. 200 (1872). In Maples the State petitioned this Court for a writ of prohibition directed to a circuit judge to recuse himself from presiding over a number of criminal prosecutions. Because the State would be without remedy in the absence of the writ, we held it proper recourse for the State in that particular case.
The overruling by a circuit judge of a motion to require him to vacate the bench is an interlocutory order, and ordinarily the Supreme Court will not review his action in an original proceeding here, since the petitioner may have the ruling reviewed on appeal. However, in a criminal case the State is without adequate remedy by appeal if the trial judge has erroneously refused to vacate the bench because if there is a verdict of acquittal or a directed verdict, the defendant in the criminal case may not be tried again because of the double jeopardy provisions of the Constitutions of the United States and the State of Mississippi. The inability of the State to have the error corrected on appeal takes the case out of the rule that the Supreme Court is without jurisdiction to review such an order in an original action for writ of prohibition. We hold this is a proper case to review the action of the trial judge in an original action for a writ of prohibition.

The rule announced in this case will not apply to plaintiffs or defendants in civil cases, or defendants in criminal cases, where the judge is requested to recuse himself, because such parties may have the ruling of the trial judge reviewed on appeal. (Emphasis added.)
Maples, 402 So.2d at 353.
In a series of cases, beginning with Southern Farm Bureau Cas. Ins. Co. v. Holland, 469 So.2d 55 (Miss. 1984), this Court departed from its previous holdings and held that it had the power, aside from statute, to grant interlocutory appeals.[7]
These cases culminated in our promulgating Rule 5 of the Mississippi Supreme Court Rules. This rule is patterned after Rule 5 of the Federal Rules of Appellate Procedure. Two important distinctions need be noted between Federal Rule 5 and this Court's Rule 5, however. The first is that the Federal Rule is specifically authorized by 28 U.S.C.S. § 1292(b); no Mississippi statute authorizes our Rule 5. The second distinction is that the Federal statute § 1292(b) and the Federal Rule only authorize an interlocutory appeal in a civil action. No interlocutory appeal is authorized in a criminal prosecution. Our Rule 5, on the other hand, is not limited to civil cases. "It applies to both civil and criminal cases." Comment to Rule 5.
For better or worse, Rule 5 exists. It has never been challenged by any litigant.[8] In today's decision we cannot escape addressing the breadth and scope of the rule's applications in criminal cases. Having granted this interlocutory appeal, must we prior to trial examine Beckwith's claims of Speedy Trial and Due Process violations? In fairness to Beckwith's contentions, it would not be an illogical extension of our post-Holland decisions to hold that we are obligated to do so, and if we find them prejudicial, terminate the prosecution and order his discharge.
But law is more than logic; it is the embodiment of human experience. To address Beckwith's Speedy Trial and Due Process contentions would be to hold that this Court, without any Legislative enactment permitting it, and based solely upon a rule promulgated by us, has the authority and duty to address his contentions and make a ruling thereon. It would be to hold that this Court somehow has the Constitutional authority to abort a criminal trial in progress and address rights that can and most assuredly would be vindicated on appeal, and if we pre-trial deem them prejudicial, terminate all criminal proceedings and direct the discharge of the defendant. *1144 Moreover, it would be to hold that, by our promulgation of Rule 5, this Court intended to stake a Constitutional claim to wield such awesome authority. A matter of more serious gravity cannot be envisioned. If we hold that in this case, however serious or extraordinary it may be, we intended by promulgation of Rule 5 to grant unto ourselves the authority to address pre-trial rights that can be vindicated on appeal from a final judgment to this Court, it will mean that we also have the authority and duty to consider them in deciding whether to grant or deny all attempted interlocutory appeals raising similar questions. We construct a quagmire onto our appellate responsibilities already strained beyond our capacity.
It will mean we ignore the wisdom of Maples in which we held that we would never address by interlocutory appeal rights that can be vindicated on appeal. It will mean we ignore the wisdom of the United States Supreme Court decisions and the United States Congress, encompassing two centuries of experience, not to address such questions by an interlocutory appeal.[9] For whatever reason the rationale of the Federal Courts came into existence, by court decisions or intent of Congress, or both, it is a most compelling wisdom, and not to be ignored.
Under our Constitution the State of Mississippi and our circuit judges have the authority and solemn responsibility following an indictment to proceed to final judgment in all criminal proceedings without interference. It is simply carrying Rule 5 too far to hold that a majority of this Court has the authority to intervene and interpose ourselves into a circuit court criminal trial, stop all proceedings, and order the discharge of a criminal defendant to protect an alleged violation of a right that can be addressed, and if violated, fully vindicated on appeal.
We today hold that it is not the intent of this Court under Rule 5 to grant unto ourselves such authority or duty. We decline Beckwith's invitation that we do so; all such rights can be fully addressed if there is an appeal to this Court from a final judgment. Miss. Code Ann. § 99-35-101 (1972).
In this holding we are not unmindful of the comment to Rule 5 that it applies to criminal as well as civil cases, nor our decisions in State v. Caldwell, 492 So.2d 575, 576-77 (Miss. 1986), and Dantzler v. State, 542 So.2d 906 (Miss. 1989). Caldwell can be readily distinguished. There we directed a circuit judge to grant a change of venue to assure the defendant an impartial jury and a fair trial; we did not terminate the prosecution and order the defendant's discharge. In Caldwell we, in effect, issued a writ of mandamus to prevent the circuit judge from committing what otherwise would have been certain reversible error. In Dantzler we granted an interlocutory appeal to determine the Constitutional validity of a statute under which a defendant had been convicted in justice court. We will await a future day to decide whether Rule 5 or Caldwell and Dantzler should indeed authorize granting an interlocutory appeal in any criminal case on issues that can be fully addressed upon an appeal from a final judgment. As Supreme Court Justice Jackson so aptly noted in Cohen, footnote 3, supra, appellate jurisdiction is the power of review, not intervention.
Under Mississippi law, Beckwith must show actual prejudice and intentional delay to gain tactical advantage by the government. Hooker v. State, 516 So.2d 1349, 1351 (Miss. 1987). This can be shown, if at all, only after a trial on the merits with a full record for this Court to review.
Mississippi caselaw requires a trial with a result before this Court will review a claim of speedy trial violation. We apply the Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), factors to the facts developed at the trial. All published Mississippi cases on speedy trial flow from *1145 a trial, a conviction and an appeal on the merits.[10]
Suffice it for today's decision that we do not read into the rule any intent to grant unto ourselves the authority or duty to abort a criminal trial in progress, and by interlocutory appeal address rights which can be fully vindicated upon appeal from a final judgment of conviction, and order the termination of all criminal prosecution and discharge the defendant.[11]

III. DOUBLE JEOPARDY
Beckwith is presently in jail, awaiting trial without bond. If his double jeopardy claim has merit, then he has two very serious civil rights being violated now: the right to liberty guaranteed him by the Fifth Amendment, and the right not to be prosecuted. These are rights collateral to and totally independent of his guilt or innocence or the conduct of his trial, and are of immediate urgency.
Miss. Code Ann. § 99-35-101 is the only statutory avenue of appeal afforded defendants in criminal cases. "Any person convicted of an offense in a circuit court may appeal to the supreme court ..." Clearly this Court does not have jurisdiction under this statute. His double jeopardy claim is not an appeal from a criminal conviction. The manner in which we have interpreted Miss. Code Ann. § 99-35-101, Hayden v. *1146 State, 81 Miss. 55, 32 So. 922 (1902); and Lemly v. State, 69 Miss. 628, 12 So. 559 (1892), is precisely as the United States Supreme Court has interpreted 28 U.S.C.S. § 1291 in attempted criminal appeals from a district court; Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937).
As Abney, however, mandates, Beckwith's rights under a double jeopardy claim in this case go beyond his right not to be convicted, and are of immediate urgency, justifying determination now. Because of the unique nature of the denial by a circuit court of a colorable double jeopardy claim, involving as it does the Constitutional right not to be prosecuted for the offense, it is final. This Court is authorized to treat it as a "final judgment" in a civil action under Miss. Code Ann. § 11-51-3 (Supp. 1992), which authorizes an appeal from a final judgment, and Miss. Code Ann. § 9-3-9 (Supp. 1992), which gives this Court jurisdiction of an appeal from any final judgment in the circuit court. This is again precisely as the United States Supreme Court has interpreted appeals from a "final decision" under 28 U.S.C.S. § 1291. "The words, `final decision in the district court,' mean the same thing as `final judgments and decrees,' as used in former acts regulating appellate jurisdictions." In re Tiffany, 252 U.S. 32, 36, 40 S.Ct. 239, 241, 64 L.Ed. 443, 444 (1920). See also Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), rehearing denied 436 U.S. 915, 98 S.Ct. 2259, 56 L.Ed.2d 416. Indeed, Abney compels us to treat the circuit court denial of Beckwith's double jeopardy claim as a "final judgment."
Moreover, Abney compels us to consider whether we have jurisdiction under Art. I, § 9 of the United States Constitution and Art. 3, § 21 of the Mississippi Constitution, guaranteeing Beckwith the right of habeas corpus. If Beckwith's legal position is correct, his pleading in circuit court entitled him to be released via a writ of habeas corpus. Miss. Code Ann. § 11-43-1; Jaquith v. Beckwith, 248 Miss. 491, 157 So.2d 403 (1963); Rule 81, Miss. R.Civ.Proc.[12] We are authorized to treat his appeal to this Court as an appeal from a denial of a writ of habeas corpus, Miss. Code Ann. § 11-43-53 (Supp. 1992); or, alternatively, his pleading is sufficiently specific to treat it as an application to this Court for a writ of habeas corpus, Miss. Code Ann. §§ 11-43-7, 11-43-9 (Supp. 1992). See also Harden v. State, 460 So.2d 1194, 1200-01 (Miss. 1984).

IV. THE MERITS OF THE DOUBLE JEOPARDY CLAIM
At the outset we note that the fact we have jurisdiction over Beckwith's double jeopardy claim does not give us pendent jurisdiction over his due process and speedy trial claims. "[A] federal court of appeals is without pendente jurisdiction over otherwise nonappealable claims even though they are joined with a double jeopardy claim over which the appellate court does have interlocutory jurisdiction." United States v. MacDonald, 435 U.S. 850, 857, n. 6, 98 S.Ct. 1547, 1551 n. 6, 56 L.Ed.2d 18 (1978), rev'g 531 F.2d 196 (4th Cir.1976); United States v. Blackwell, 900 F.2d 742, 746 (4th Cir.1990).
We therefore address Beckwith's double jeopardy claim solely, without consideration *1147 of, or affected by, his due process or speedy trial claims.
A defendant's double jeopardy right not to be re-prosecuted for the same offense accrues instantly upon the happening of some event in criminal proceedings against him. A double jeopardy right "attaches" when the jury is sworn and empanelled to hear the case. Jones v. State, 398 So.2d 1312, 1314 (Miss. 1981). In order for his double jeopardy right not to be re-prosecuted for the same offense to accrue, however, the original jeopardy must have "terminated." Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Thereafter, lapse of time neither strengthens nor diminishes it. No subsequent event affects an accrued double jeopardy right. Beckwith's sole basis of a claim of violation of his double jeopardy right is premised upon the nolle prosequi order of March 10, 1969. If he is correct, the State would have been absolutely prohibited from again seeking his indictment and prosecuting him on March 11, 1969. If the nolle prosequi order did not give him the right not to be again prosecuted for this murder, the State had just as much authority under a double jeopardy claim to proceed in 1990 as it would have in 1970.
Thus, the sole question before us is whether the nolle prosequi entered upon the motion of the district attorney gives him such right under either our Mississippi or the United States Constitution.
Art. 3, § 22 of the Mississippi Constitution states:
Section 22. No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.
Clearly, if a defendant has pleaded guilty, been convicted, or acquitted by a jury, his double jeopardy right has fully accrued. It is also settled law that a court-directed verdict to the jury to find the defendant not guilty has the same effect as a jury-deliberated verdict of not guilty. See, e.g., State v. Russell, 358 So.2d 409 at 412-13 (Miss. 1978); Agregaard v. Duncan, 252 Miss. 454 at 457, 173 So.2d 416 at 417 (1965); State v. Thornhill, 251 Miss. 718 at 726, 171 So.2d 308 at 312 (1965).
Defendants may be repeatedly retried, however, following mistrials granted because the jury was deadlocked and could not reach a unanimous verdict. Watts v. State, 492 So.2d 1281 (Miss. 1986); Wallace v. State, 466 So.2d 900 (Miss. 1985); State v. Moor, 1 Walk.Ch. 134, 1 Mor.St.Cas. 13, 12 Am.Dec. 541 (Miss. 1823). Federal jurisdictions follow the same rule. Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).
We have also held that "retiring" or "passing" an indictment to the files is not an acquittal barring further prosecution, following which the case may be reopened upon motion of the State. Walton v. City of Tupelo, 229 Miss. 193 at 196, 90 So.2d 193 at 194 (1956); Gordon v. State, 127 Miss. 396, 90 So. 95 (1921).
Pursuant to § 22 of our Constitution, this Court has held that following a mistrial declared because of a hung jury, a nolle prosequi entered at the request of the State did not terminate the original jeopardy, and the State was not barred thereafter from seeking the re-indictment of and reprosecuting the defendant from the same offense. Smith v. State, 158 Miss. 355 at 359, 128 So. 891 at 892 (1930). This same principle has been applied in California and Florida. People v. Lucas, 78 Cal. App. 421, 248 P. 691 (1926); Smith v. State, 135 Fla. 835, 186 So. 203 (1939). 22 C.J.S. Criminal Law, § 255, p. 667.
Nor does this rule in and of itself offend the United States Constitution. Bucolo v. Adkins, 424 U.S. 641, 96 S.Ct. 1086, 47 L.Ed.2d 301 (1976), citing Smith v. State, 135 Fla. 835, 186 So. 203 (1939); Chatfield v. Ricketts, 673 F.2d 330, 332 (10th Cir.1982), cert. denied 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88; Arnold v. McCarthy, 566 F.2d 1377, 1388 (9th Cir.1978). Cf. Lee v. United States, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977). The Federal Courts have held that the application of the *1148 double jeopardy rule "has never been considered absolute." United States v. McHan, 966 F.2d 134, 139 (9th Cir.1992); Jeffers v. United States, 432 U.S. 137, 151-52, 97 S.Ct. 2207, 2216-17, 53 L.Ed.2d 168 (1977).
In Jones v. State, 398 So.2d 1312, 1314 (Miss. 1981), the circuit judge declared a mistrial when there was no manifest necessity to do so. We held that the double jeopardy clause prohibited the defendant from again being put to trial for the same offense, because once the jury had been empanelled, the defendant had a right to have his trial concluded by the same jury. The distinction between Jones and this case is readily apparent. Beckwith's right to have his case heard by the jury empanelled to hear it was never frustrated. Two juries heard his case, and each was unable to agree upon a verdict, and was hopelessly deadlocked. Clearly there was a manifest necessity to declare a mistrial in each case. Also, see Spann v. State, 557 So.2d 530 (Miss. 1990) (distinguishing Jones).
McNeal v. Hollowell, 481 F.2d 1145 (5th Cir.1973), cited by Beckwith is also distinguishable. In that case, during McNeal's trial, a key state witness asserted his Fifth Amendment right not to incriminate himself, and the district attorney, finding himself unable to offer sufficient evidence to make a jury issue, moved for a nolle prosequi, which was sustained by the Court over vigorous defense objection. The jury was dismissed, and shortly thereafter McNeal was re-indicted, re-tried and convicted. McNeal sought remedy by habeas corpus in the United States district court, and on appeal the Court of Appeals held that there was no manifest necessity of a mistrial which resulted from the district attorney's taking his chance on an unreliable witness. The Court held that to allow the State to move for a nolle prosequi and have the circuit court declare a mistrial and discharge the jury would lend itself to "prosecutorial manipulation," or "prosecutorial misconduct." McNeal, 481 F.2d at 1150. In McNeal, however, and contrary to this case, the defendant was denied his right to have the jury empanelled to hear his case proceed to final verdict.
On the record before us, there is nothing to suggest any prosecutorial misconduct or manipulation in moving for a nolle prosequi in 1969. The State had unsuccessfully sought the conviction of Beckwith through two successive trials, both ending when the jury became deadlocked. A hopelessly deadlocked jury is clearly a manifest necessity for a mistrial. Richardson, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984); Downum, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). There was no objection by Beckwith to the entry of the nolle prosequi
Constitutional rights of an accused must be forever safeguarded. Society as well has the right to a criminal justice system that is not a toothless tiger. It is not at all unusual for jurors to be unable to agree on a verdict because they believe there is insufficient evidence to convict. If, following a mistrial declared in such an instance, the State does what it considers manifestly fair, and moves to dismiss the case, it would be shockingly wrong to hold that it could never have the case re-opened upon discovery of additional evidence.
In sum, the entry of the nolle prosequi in 1969 did not terminate Beckwith's original jeopardy or accrue unto him the right not to be re-indicted and re-prosecuted for the same offense.

V. RIGHT TO BAIL
As we have above noted, this Court has jurisdiction to treat Beckwith's pleading as an application for a writ of habeas corpus directed to the circuit directed to the circuit judge, Miss. Code Ann. § 11-43-7, -9, which we are constrained under the unusual circumstances of this case to do. While Beckwith remains subject to trial under the present indictment, we direct the circuit judge upon remand to reconsider whether he "would constitute a special danger to any other person or the community," Art. 3, § 29, Miss. Const., and make specific findings thereon. Beckwith is over seventy years of age, in failing health, and has been in jail now over a year. Unless the State can satisfy the court that he does *1149 indeed constitute a special danger, he should be granted bail in a reasonable amount.
We therefore dismiss Beckwith's interlocutory appeal as to his speedy trial and due process claims without prejudice to assert them at trial and on appeal, and affirm the circuit court's denial of his double jeopardy claim.
DISMISSED IN PART; AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
SULLIVAN, PITTMAN and ROBERTS, JJ., concur.
ROY NOBLE LEE, C.J., dissents with written opinion joined by DAN M. LEE, P.J., and PRATHER, J.
DAN M. LEE, P.J., dissents with written opinion joined by ROY NOBLE LEE, C.J., and PRATHER, J.
BANKS and McRAE, JJ., not participating.
ROY NOBLE LEE, Chief Justice, dissenting:
In my view, the majority opinion does violence to the United States Constitution, the Mississippi Constitution and established law and precedent of the United States and the State of Mississippi. I believe it to be erroneous and the worst pronouncement of the law during my tenure on the Mississippi Supreme Court bench, and that it is an egregious miscarriage of justice. Therefore, I emphatically dissent!
At page 1136, the majority opinion states, "While Beckwith's indictment, arrest and anticipated trial may raise serious and troubling Constitutional questions, he clearly has no constitutional or statutory right to an interlocutory appeal. After mature consideration we have concluded that the first two grounds asserted by Beckwith afford no basis for an interlocutory appeal, and decline to address them. We do address the final ground and find it without merit." The opinion then continues for fifteen pages, and castigates and harangues the granting of an interlocutory appeal for the purpose of deciding serious and important questions of law.

BACKGROUND
After indictment in July, 1963, for the murder of Medgar Evers on June 12, 1963, and trials in February, 1964, and April, 1964, both of which resulted in mistrials because of hung juries, Beckwith was released on $10,000.00 bail. The case remained dormant until March 10, 1969, with no action taken by the State. On that date, the district attorney filed a motion seeking a nolle prosequi of the indictment. The lower court, comprised of all three circuit judges, approved and ordered its entry.
At the December 19, 1990, term of the Hinds County Circuit Court, the grand jury again indicted Beckwith for the same offense, using the exact charge and language as in the 1963 indictment. Subsequently, counsel for Beckwith filed a Motion to Dismiss the indictment returned against him on grounds that he was denied his right to a speedy trial, his right to due process of law, his right not to be twice placed in jeopardy for the same offense and his right to confront the witnesses against him.
After a lengthy and exhaustive hearing, the lower court found:
... (1) that a substantial basis exists for a difference of opinion on the aforementioned questions of law; (2) that appellate resolution of said issues of law may advance the termination of this litigation and avoid exceptional expense to the parties; (3) that appellate resolution of said issues of law may protect the defendant from substantial or irreparable injury; and, (4) that appellate resolution of said issues of law may resolve issues of general importance in the administration of justice.[1]
The lower court denied the Motion to Dismiss the indictment but certified the questions mentioned for interlocutory appeal to the Mississippi Supreme Court on August 4, 1992. This Court, comprised of *1150 seven members, with two dissenting, granted the interlocutory appeal. The law of the case was established on that issue.

DISCUSSION
Regardless of the fact that the issue of the interlocutory appeal has been settled, the author of the majority opinion states that this appeal granted to Beckwith was not based upon any constitutional mandate or statute giving him any such right, but solely upon a rule promulgated by this Court, and that, while Beckwith's indictment, arrest and anticipated trial raise serious troubling constitutional questions, Beckwith has no constitutional or statutory right to an interlocutory appeal. Yet, the United States Constitution and the Mississippi Constitution of 1890, clearly, succinctly and emphatically set out and demand that in all criminal prosecutions, the accused shall have the right to a speedy ... trial.
In Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), without citation of statute or constitution, but under the inherent power of this Court, the common law doctrine of sovereign immunity was abolished. In Presley v. MS Highway, 608 So.2d 1288 (Miss. 1992), r'hg den. (Miss. 1992), this Court again exercised its inherent power and authority to implement the abolition of sovereign immunity. The Miss.Rules of Civil Procedure, Miss.Rules of Evidence, Mississippi Supreme Court Rules and other rules approved by this Court for the trial courts are alive and well and have been, since their adoption by this Court. The majority opinion shies away from addressing the important issues here on that flimsy excuse, and, therefore, I must do so. I will not cite the many cases and authorities supporting the view of the minority in this case, because I am sure that my dissenting colleagues will do so, appropriately.

A.

DENIAL OF A SPEEDY TRIAL
The Sixth Amendment to the U.S. Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." Article 3, Section 26 of the Mississippi Constitution of 1890 provides that "in all criminal prosecutions the accused shall have a right to a ... speedy and public trial ..."
I restate for emphasis that Beckwith was arrested June 23, 1963, and was indicted for Evers' murder in July, 1963. The first trial in February, 1964, and the second trial in April, 1964, both resulted in mistrials because of hung juries. Beckwith had been incarcerated during those times without bail, but was released on $10,000.00 bond, following his second trial. On March 10, 1969, the State of Mississippi requested a nolle prosequi of the indictment, which request was approved by all three circuit judges of the Seventh Circuit Court District. The effect of the nolle prosequi was to conclude and dismiss the murder charge against Beckwith.
The time lapse from April 17, 1964, the date of the second mistrial, until March 10, 1969, the date of the nolle prosequi, was five years, lacking one month. The cases are legion that the prosecution at that point was in egregious violation of Beckwith's federal and state constitutional rights to a speedy trial after five years delay. Instead of acknowledging and facing those facts, the prosecution simply filed a motion requesting that the indictment be dismissed on a nolle prosequi order. The Latin phrase nolle prosequi means that the State was "unwilling to prosecute"; "unwilling to follow (in its prosecution)"; "cannot prosecute."
At the December, 1990, term of Hinds County Circuit Court, Second Judicial District, the grand jury again indicted Beckwith for the murder of Evers. The indictment was exactly the same as the 1963 indictment  as if it had been pulled from the 1963 court record. For all purposes, it was a revival of the 1963 case against Beckwith. This Court should vindicate his speedy trial rights for that period of time, and grant him the relief sought in this appeal.

B.

SPEEDY TRIAL AND RIGHT TO DUE PROCESS UNDER THE LAW
The Fifth Amendment to the U.S. Constitution and Article 3, Section 26, of the *1151 Mississippi Constitution of 1890, provide that no person shall be deprived of life, liberty or property, without due process of law. Due process of law commands that a person shall not be denied anything under the law that adversely affects his life, liberty or property. This includes his right to a speedy trial, his right to be confronted with witnesses, even though in the meantime they may have died, his right to enjoyment of life and liberty and other things related thereto.
The majority opinion states that speedy trial, due process and double jeopardy should not be considered by this Court until after a full blown third trial of Beckwith and then, only, if he should be convicted. That is contradictory to the provisions of Rule 5 of the Miss. Supreme Court Rules under which this Court has been operating for five years and has granted and disposed of dozens upon dozens of interlocutory appeals.
The three questions of constitutional law, which we have before us today, were thoroughly presented to the trial court in exhaustive hearings. There was a complete record made of all the facts surrounding those issues, including anything that could have been presented or developed in a jury trial of the case. The facts developed on those issues are undisputed. They reflect that the long delay of twenty-nine years for a third trial of Beckwith has highly prejudiced him in his defense of the 1990 charge against him:
(1) The bullet fragments from the deceased, the unspent shells from the rifle found at the scene and fifty-three test shells were sought for an independent examination by Beckwith's counsel. The prosecution advised the items of evidence are unavailable. (2) Witnesses testifying at the second trial are no longer available, since they are deceased or their memories are extinct. (3) Two of Beckwith's prior attorneys are deceased and their files no longer are in existence. The only other defense attorney is eighty-three years of age and his file has been lost due to the passage of time. (4) The prosecution intends to use transcripts of dead prosecution witnesses, who cannot now be impeached and Beckwith will be denied confrontation for cross-examination of those witnesses. (5) The crucial alibi of a witness for Beckwith, Roy Jones, is deceased. (6) Mr. and Mrs. B.L. Pittman; Chief of Detectives M.B. Pierce; John Goza; Lee S. Prospere; Sheriff J.R. Gilfoy; Sam Allen, Jr.; and Warren, Bullock, Cunningham, Sanders and Speights, witnesses or potential witness, are deceased. (7) Beckwith is now seventy-one years of age and in poor health. He does not have the ability to concentrate; he has been unable to recall events essential to his defense; and he has been unable to recall his whereabouts on June 7 or June 11, 1963, in order to rebut probable testimony of the prosecution's witnesses.
The assistant district attorney, who signed the State's brief, stated at page fifteen:
Unlike one accused, who may move for a change of venue if he believes he cannot receive a fair trial at the place the crime occurred, the prosecution may only wait for passions about the case to subside. The prosecution did not attempt a third trial after the second mistrial because it was not possible to obtain a fair one. (P. 15, State's brief).
The assistant district attorney followed that statement in oral argument by speaking of turbulent times in the 1960's and stating that times have changed now to a more favorable position for the State. My examination of the record before us does not support the statement that the prosecution did not obtain a fair trial. This writer doesn't recall any case that has been tried, as the one at bar, where the State of Mississippi has claimed to have been treated unfairly at the hands of a jury or trial court.
The finality of the proceedings against Beckwith in 1969 are indicated by the facts that the murder rifle ended up in the closet of one of the circuit judges; and, after his death, the closet of a prosecutor; the fragmented murder bullet was missing; the court file was missing and other items of *1152 evidence and important documents were missing.
Further indication of the finality of the judgment of nolle prosequi, is when the district attorney for the Seventh Circuit Court District, of which Hinds County is a part, Honorable Edward J. Peters, was being pressed to indict and try Beckwith, on August 17, 1987, gave the following statement to the Clarion Ledger newspaper:
"There is no way under any stretch of the law that this case could be tried again. Anyone having the first class in law school ought to know that."
(Appellant's brief at page 2).
In Jones v. State, 250 Miss. 186, 164 So.2d 799 (1964), Jones was indicted and convicted for burglary of Ponder's store in Brandon, Rankin County, Mississippi. He was charged with burglarizing the store on December 19, 1953. However, before indictment in Rankin County, he was released to Humphreys County where he was tried for another burglary and sentenced to five years in the penitentiary. Thereafter, he was tried in Sharkey County for grand larceny and sentenced to serve an additional four years in the penitentiary. He was released from the penitentiary September 16, 1961, and returned to Rankin County where he was indicted in January 1962. Jones was tried and convicted January 23, 1963, and sentenced to serve three years in the State penitentiary. Jones appealed and raised one issue in this Court, e.g., a speedy trial denial. Justice Gillespie, in reversing and discharging Jones, wrote:
Appellant filed a motion to quash or dismiss the indictment on the ground that he had been denied the right of a speedy trial guaranteed by Section 26 of the Constitution of the State of Mississippi. The motion alleged, and the proof showed, that during the time intervening between the date of the crime and the trial, the following occurred: (1) The judge before whom the original affidavit was made died and the file was lost; (2) the memory of the witnesses was impaired to the extent that they could not recall some of the salient facts concerning the crime; (3) the defendant's attorney had died; (4) the detainer or "hold order" placed with the superintendent of the penitentiary had resulted in the denial of privileges, including the granting of a parole.
... .
In Nixon v. State, 2 Smedes & M. (10 Miss.) 497, 41 Am.Dec. 601, the Court said: "By a speedy trial is then intended, a trial conducted according to fixed rules, regulations, and proceedings of law, free from vexations, capricious, and oppressive delays, * * *."
... .
We hold that where the State knows the identity of the accused, has the accused in custody, obtains a confession, and holds the accused in the penitentiary for a period of over eight years, during which time the accused has suffered the disadvantages as stated herein, then the delay is vexatious, capricious, and oppressive, and the accused has been denied a speedy trial as contemplated by the Constitution. This is in accord with the cases from the States where similar questions have arisen. 118 A.L.R. 1037; State v. Milner, et al (Ohio Com.Pl.) [6 O.O.2d 206] 149 N.E.2d 189; State v. Brockelman, 173 Kan. 469, 249 P.2d 692; Arrowsmith v. State, 131 Tenn. 480, 175 S.W. 545.
Jones, 250 Miss. at 188-190, 164 So.2d at 799-800.
In Jones, this Court relied solely upon our Mississippi Constitution of 1890 and sections of Mississippi law to decide the speedy trial issue, without resort to the United States Constitution and federal decisions. The present Supreme Court of the State of Mississippi should follow and uphold our Constitution and our laws, as in Jones, and reverse the lower court in the case at bar.

C.

DOUBLE JEOPARDY
The Fifth Amendment to the State's Constitution guarantees that Beckwith will not *1153 be twice put in jeopardy of a trial for the murder of Medger Evers. That same guarantee provides that no state can diminish or lessen that right by its constitution or law. States may grant more relief in their interpretation of the state constitution, but not less than the relief provided by the U.S. Constitution. With this principle in mind, we apply it to the Beckwith case now being considered on that issue.
Jeopardy attaches in a criminal trial when the jury is empaneled, which includes an oath by the jury to well and truly try the accused and a true verdict give. A conviction, or an acquittal, a voluntary dismissal by the state, an act by the state violative of due process (taking unfair advantage of the defendant), which requires a mistrial, terminates jeopardy incurred by the defendant. Of course, a mistrial which is declared by the Court because of the inability of a jury to agree upon a verdict does not terminate jeopardy and the ability of the prosecution to continue its efforts to try and convict the defendant. Also, where an incident occurs during the trial for which the state is not responsible or accountable, arising to a manifest necessity for mistrial, the entry of such a mistrial by the trial judge does not terminate the jeopardy which has attached.
Applying that principle and reasoning to Beckwith, jeopardy attached in his trial when he was tried in February, 1964. It was not terminated when that trial resulted in a mistrial because the jury could not agree upon a verdict. At the second trial in April, 1964, the attachment of jeopardy was carried over and still existed from the first trial because it had not been terminated. There was no double jeopardy. Likewise, the second trial in April, 1964, resulted in a hung jury and the trial court entered a mistrial. Jeopardy still had not been terminated. That jeopardy continued for five years until, at the motion of the prosecution and the approval of all trial judges of the district, a nolle prosequi judgment was entered. That judgment ended the case against Beckwith, which had been pending for five years. The jeopardy which had attached with the first trial was then terminated. All the scrubbing and washing from the adoption of the United States Constitution cannot erase that red blotch of former jeopardy which Beckwith had incurred. Reams of paper and volumes of law books cannot change or sweeten it where it would be palatable to the U.S. Constitution.
When Beckwith was indicted in December, 1990, on an indictment charging, in the same words and manner, the crime for which Beckwith had already been tried twice; when jeopardy had been terminated; and when he was brought before the same court on the same charge, double jeopardy reared its two pronged head and tried to strike again in violation of the Fifth Amendment to the U.S. Constitution  the shield and sword against double prosecution.
Since Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), holding that double jeopardy under the U.S. Constitution applies to the states, Mississippi and all other states have been bound by it, without question.

CONCLUSION
The State has cited us to no case that compares with the case at bar, nor have we found one. There is no precedent or support, real or imaginary, upon which the majority opinion could be based.
The prosecution concedes that Beckwith has been in its sights for twenty-nine years; that twenty-eight years ago it shot at him twice and missed after full trials on the merits; that it then quit, having nothing additional to support the case or to proceed with; and, finally, that when time removed and eroded the files, evidence and Beckwith's witnesses, and he became old and infirm, the prosecution takes advantage of those facts and again cocks and aims its gun at him.
The U.S. Constitution, in 1787, never would have been adopted had not the delegates to the convention agreed that ten amendments to it, the Bill of Rights, would immediately follow. This was accomplished. The Fifth and Sixth Amendments guaranteeing (1) a speedy trial, (2) due *1154 process (fair trial), (3) double jeopardy protection  no person shall be twice put in jeopardy of life or limb  are polestars of the Bill of Rights. Those guaranteed rights were fresh in the minds of our founding fathers  from blood, sweat, tears and deprivation, at the whim of British law  or tyranny.
I think the majority has erred grievously and has disregarded and obfuscated the meaning of that great document and Gibraltar of human and civil rights.
The Declaration of Independence was the promise and the Constitution was the fulfillment of this great country to be. The year before the adoption of the Declaration of Independence, in 1775, Alexander Hamilton said:
"The sacred rights of mankind are not to be rummaged for, among old parchments, or musty records. They are written, as with a sum beam in the whole volume of human nature, by the hand of the divinity itself; and can never be erased or obscured by mortal power."
I dissent to the majority opinion!
DAN M. LEE, P.J., and PRATHER, J., join this opinion.
DAN M. LEE, Presiding Justice, dissenting:
With due respect for today's majority, we find that we are constrained by controlling principles of law to disagree with its conclusions on the reviewability of Beckwith's speedy trial and due process claims, as well as the merits of his double jeopardy claim.
Along with federal courts, this Court has adopted a rule for controlling its workload by limiting review of pretrial decisions. Ours was duly promulgated as Mississippi Supreme Court Rule 5, which in this case, should be dispositive on the issue of reviewability. The federal counterpart is quoted at length by the majority and referred to in this opinion as the MacDonald rule. See United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). These two rules are not, nor were they ever intended to be, identical. However, on the egregious facts presently before the Court, it is our opinion that neither the MacDonald rule nor our own Rule 5 bar consideration of Beckwith's claims. To the contrary, our Rule 5 specifically authorizes litigants to seek interlocutory review when the issues in their case meet the criteria set out in the Rule. The majority effectively tears down our own Rule 5 and attempts to rebuild it in the image of the federal provision, and in so doing, it overrules our decisions that led to the adoption of Rule 5 and the 20 or so cases that have applied it[1]. Ironically, the majority misinterprets the federal rule in the process. For this reason, the majority errs in holding that only the double jeopardy claim is properly reviewable. Furthermore, it also errs in holding that Beckwith's double jeopardy claim lacks merit. Accordingly, we dissent.

FACTS
The facts relevant to this appeal bear repeating. On June 12, 1963, Medgar Evers was murdered at his Jackson home. Byron De La Beckwith was arrested on *1155 June 23, 1963 and indicted for the murder of Evers in July of 1963. Beckwith was tried in Hinds County in February 1964. The jury was unable to reach a verdict and a mistrial was declared. He was again put on trial in April of 1964, and again the jury was not able to convict or acquit. A mistrial was declared on April 17, 1964.
Following the second unsuccessful attempt to convict Beckwith, the prosecuting district attorney decided not to proceed with a third trial immediately. Instead, he shifted his attention to other matters and took no further action on the case. In March of 1969, his successor in the capacity of Hinds County District Attorney requested a formal order to nolle prosequi the indictment. This request was granted and the nolle prosequi order was signed by all three Hinds County Circuit judges. For double jeopardy purposes the prosecution ended with the entry of that order.
Years passed and no action was taken by the State. Witnesses died, Beckwith's memories dimmed, his defense team retired from legal practice and two of the three passed away, a new district attorney was elected, and still the State took no action. Then, in December, 1990, 21 years and eight months after the original indictment was nolle prosequied, the State reindicted Beckwith for the same offense. With the delay since the second trial approaching 29 years, we are currently called upon to determine whether the State may change its mind and place Beckwith in jeopardy yet a third time for the same offense.

I. REVIEWABILITY OF SPEEDY TRIAL AND DUE PROCESS CLAIMS.
The crux of the majority's position is that we ought not or can not review Beckwith's speedy trial and due process claims because they are pretrial determinations and not "final" judgments. As a matter of practical necessity, all appellate courts must adopt some form of the "final judgment" rule. The only alternative is to stand ready to review every decision made by every trial judge in every case, with the inevitable result that no matter would ever be completed. However, in certain cases, issues arise that warrant immediate consideration from higher courts in order to prevent the needless waste and harm associated with an unnecessary trial. The ultimate goal is to promulgate a rule to govern the timing of appeals that will promote efficiency in resolving cases, and thereby maximize the benefits to all litigants. The trick, though, is to develop a rule that will best limit the risk of "piecemeal" appeals while at the same time allowing litigants a sufficient opportunity to avoid the costs and delays associated with unnecessary trials. In a concurring opinion that was a harbinger of our current Rule 5, the problem facing this Court and all courts of appeal was aptly described:
There can be no doubt, generally speaking, but that there is great merit in the final judgment rule. This is the traditional rule enforced in every jurisdiction in this country to one extent or another. It proceeds on the premise that piecemeal appeals are not favored and that appeals ordinarily should be taken only from final judgments. Equally without fear of contradiction, I suggest that there are special and unusual cases wherein, by virtue of the nature of the action and the nature of the question presented on appeal, an interlocutory appeal might settle the controlling principles involved in a case and otherwise expedite the ultimate termination of the litigation and in consuquence [sic] avoid unnecessary expense or delay. Where these conditions are met, and their frequency will no doubt be even less in actions in circuit court than in chancery court, there is no reason on principle why an interlocutory appeal should not be allowed.
Southern Farm Bureau Cas. Ins. Co. v. Holland, 469 So.2d 55 (Miss. 1984) (Anderson, Reuben, J., specially concurring).
Our current rule for governing interlocutory appeals is Mississippi Supreme Court Rule 5. It represents the culmination of a series of cases following Holland in which we carefully considered the competing interests involved. The Rule has produced *1156 satisfactory results in the years since its adoption in 1988.
However, we are now challenged to justify the existence of Rule 5. Though it is much too late in the day to seriously question the rule, we gladly come to its defense under the egregious facts of this case. The question of this Court's authority to adopt procedural rules has long been settled:
The inherent power of this Court to promulgate procedural rules emanates from the fundamental constitutional concept of separation of powers and the vesting of judicial powers in the courts. Matthews v. State, 288 So.2d 714 (Miss. 1974); Gulf Coast Drilling & Exploration Co. v. Permenter, 214 So.2d 601 (Miss. 1968); Southern Pacific Lbr. Co. v. Reynolds, 206 So.2d 334 (Miss. 1968), wherein the following is stated:
... The phrase "judicial power" in section 144 of the Constitution includes the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business. 206 So.2d [at] 335.
Newell v. State, 308 So.2d 71 (Miss. 1975) (emphasis added).
The cases reaffirming and applying Newell are legion, and the majority does not question its continuing validity. In the 1984 special concurrence in Holland, the seed that ultimately grew into Rule 5 was planted:
It is accepted constitutional doctrine in this and every other jurisdiction in this country that the highest court of the jurisdiction, generally denominated the Supreme Court, has such subject matter jurisdiction as is vested in it by the constitution of the jurisdiction.
In this state the judicial power is vested in this Supreme Court and such lower courts as are provided for in the constitution or otherwise authorized by law. Miss. Const. § 144 (1890); Newell v. State, 308 So.2d 71 (Miss. 1975).
At this late date, there can be no doubt of the authority of this Court to promulgate and enforce rules of procedure. Newell v. State, 308 So.2d 71 (Miss. 1975). Southern Pacific Lumber Co. v. Reynolds, 206 So.2d 334 (Miss. 1968) announced the authoritative construction of the phrase "judicial power" in Section 144 of our Constitution to include:
the power to make rules of practice and procedure, not inconsistent with the Constitution, for the efficient disposition of judicial business. (206 So.2d at 335).
If this Court has any rule making power, the scope of that surely includes the procedural aspects of appeals to this Court. If there is any aspect of procedure that relates to the efficient disposition of judicial business, it is the setting and providing of times when actions with respect to lawsuit[s] may or must be taken.
Holland, 469 So.2d at 63 (emphasis added).
The compelling reasons that this Court later gave for abandoning the original statutory scheme for interlocutory appeals were also foreshadowed in the Holland concurrence:
If no interlocutory appeal were available, the parties would have been forced into the position of litigating a novel claim in its entirety, such litigation no doubt attended by substantial expenditure of time and money. At the conclusion of the litigation and following entry of final judgment, of course, an appeal would lie under rules everyone accepts. But if on that appeal, the net effect of such an action would have been that the time and money of the litigants and the circuit court spent in litigating the claim would have been wasted [then interlocutory review would prevent such waste]. To be sure, some expenditure of time and money is unavoidable in litigation. The point is that this risk of waste could be avoided.
Holland, 469 So.2d at 64. (Anderson, Reuben, J., concurring).
The suggestions of the concurring Justices in Holland became the law of this state when this Court held:
After careful consideration, we find that there may be exceptional circumstances which may warrant an interlocutory *1157 appeal from circuit court. There appears no reason to allow this form of appeal only from chancery court and no valid reason to continue our previous rigid and inflexible rule.
Kilgore v. Barnes, 490 So.2d 895, 896 (Miss. 1986).
Significantly, the primary justification for changing the prior scheme was:
The important consideration is that the ends of justice be served without unnecessary delay and expense. It is incumbent upon this Court to see that we aid the lower courts and not act as an impediment to the final and speedy resolution of cases.

Id. at 896 (emphasis added).
Another significant development followed shortly after Kilgore when this Court granted an interlocutory appeal in a criminal case. See State v. Caldwell, 492 So.2d 575 (Miss. 1986). The Court in Caldwell recognized the principle from the Maples case relied on by the majority, but rejected it in favor of the then developing principles on interlocutory appeal:
This Court has previously held that remedial writs such as prohibition, mandamus, or injunction should be granted only in cases of extreme necessity to prevent erroneous actions by trial courts and when the erroneous actions cannot be remedied on appeal. Harden v. State, 460 So.2d 1194 (Miss. 1984); State v. Maples, 402 So.2d 350 (1981).
However, this Court's recent cases have permitted interlocutory appeals from circuit court in the exercise of its inherent power to procedurally control its business. See e.g., Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986); Southern Farm Bureau Cas. Ins. Co. v. Holland, 469 So.2d 55 (Miss. 1984). See also, Newell v. State, 308 So.2d 71 (Miss. 1975) (Inherent power of the Supreme Court to promulgate procedural rules emanates from the constitutional concept of separation of powers and the vesting of the judicial powers in the courts).
State v. Caldwell, 492 So.2d 575 (Miss. 1986).
In 1988, the new scheme for interlocutory appeals that had been developing since Holland culminated with the adoption of Rule 5 quoted infra. As one commentator has stated:
These experiments led the Court to accept Justice Anderson's suggestion and to include in the 1988 rules a rule for providing a procedure for interlocutory appeals from both circuit and chancery courts. While the rule in some respects follows federal practice, it also contains significant differences. The most dramatic departure from federal practice is that Rule 5 applies to both criminal and civil appeals. In federal court, interlocutory appeals are available only in civil cases, although this restriction has been criticized.
L. Munford, Mississippi Supreme Court Practice § 4.1 (1991) (emphasis added).
Since its effective date, the rule has functioned well. As the majority suggestively notes, it has not been challenged by any litigant. The reason for this is simple. The rule does not violate separation of powers principles by enlarging the powers of the judiciary at the expense of the co-ordinate branches. Nor does it grant a right of appeal as the majority insists. The long and short of Rule 5 is that it establishes the criteria for when this Court will, in the interest of terminating the litigation and avoiding exceptional expense to the parties, exercise its authority to hear an appeal prior to entry of a final judgment in a lower court. The key distinction between granting a new right of appeal and merely controlling the timing of existing appeals was best described as follows:
But this overlooks the simple distinction between (a) subject matter jurisdiction to hear a case at all, and (b) the timing of the hearing processes for those cases otherwise within the Court's appellate subject matter jurisdiction. What, and all Rule 5(a) ... hold[s] is that this Court can regulate the timing for the hearing of appeals, subject matter jurisdiction of which is vested in this Court independently by statute.
*1158 Bickham v. Dept. of Mental Health, 592 So.2d 96 (Miss. 1991) (Robertson, J., dissenting).
Of course this Court's jurisdiction to hear appeals in criminal matters is beyond peradventure:
Section 144. The judicial power of the state shall be vested in a Supreme Court and such other courts as are provided for in this constitution.
Section 146. The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law.
Miss Const. art. 6 (emphasis added).

APPLICATION OF RULE 5.
As the foregoing analysis clearly establishes, this Court has the authority to promulgate a rule to govern interlocutory appeals. The Court has adopted Rule 5 for this purpose. Rule 5 reads, in pertinent part, as follows:
(a) Petition for Permission to Appeal.
An appeal from an interlocutory order may be sought if the order grants or denies certification by the trial court that a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:
(1) Materially advance the termination of the litigation and avoid exceptional expense to the parties; or
(2) Protect a party from substantial and irreparable injury; or
(3) Resolve an issue of general importance in the administration of justice.
Miss.S.Ct.R. 5.
Application of the rule to the current facts leaves no doubt that Beckwith is entitled to have his claims reviewed. The first requirement under the rule is "a substantial basis for a difference of opinion on a question of law." Precedents from this Court and recent cases in federal courts establish more than a substantial basis for disagreement with the lower court. They clearly indicate that the trial judge was wrong in not dismissing the indictment on speedy trial grounds. Doggett v. United States, ___ U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); see also, United States v. Shell, 974 F.2d 1035 (9th Cir.1992) (as will be more fully developed infra).
The second requirement is that resolution of the difference "may materially advance the termination of the litigation and avoid exceptional expense to the parties." As the next section of this opinion will clearly demonstrate, dismissal of the indictment against Beckwith is the only result possible in this case in light of the recent U.S. Supreme Court ruling in Doggett v. United States, ___ U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Thus appellate resolution of the speedy trial claim would clearly "materially advance the termination of the litigation". As for the exceptional expense, without engaging in undue speculation, we feel confident in saying that given the facts of this case a trial will cost Mississippi taxpayers hundreds of thousands of dollars. At a bare minimum, expenses would include fees for Beckwith's court appointed attorneys, all the costs of transporting and boarding the witnesses, parties, judge, jurors, etc., as well as the costs of diverting local and state law enforcement officers. And all these expenditures to what end? Any conviction the State could secure would necessarily have to be reversed on the grounds the majority refuses to consider today. There is no rational ground for disagreement with our conclusion that this requirement of Rule 5 is satisfied.
The next requirement is that appellate resolution of the difference of opinion may "protect a party from substantial or irreparable injury." Here we note that the three enumerated requirements are disjunctive. Having established that 5(a) is satisfied, we are not absolutely required to proceed any further. We say this because it may be that Beckwith would have trouble in strictly meeting this requirement. We certainly would not say that merely standing trial is irreparable injury. However we are cognizant of the fact that due to Beckwith's advanced age (71) and failing health there is more than a remote probability that irreparable injury will follow from this particular *1159 trial. At any rate the injuries to be considered may be to either party. In our opinion the divisiveness caused by this trial "may" cause substantial and irreparable injury to the State and the body politic. And again, to what end would these injuries be risked? Even if this Court affirmed any potential conviction, the U.S. Supreme Court would surely reverse based on its most recent speedy trial case. See Doggett, supra.
The final requirement of Rule 5 is that appellate resolution may "resolve an issue of general importance in the administration of justice." This third criterion is necessarily more difficult to meet than the others. We would again point out the disjunctive nature of the criteria. There have been some indications that similar hate crimes of this and earlier eras will be reconsidered if the present case goes to trial. In our opinion there are certainly enough such cases in our State's history to make this an issue of "general importance to the administration of justice."
Accordingly, there can be no doubt that Beckwith's constitutional claims meet the Rule 5 criteria for interlocutory review. This Court was therefore imminently correct in August, 1992, when a majority of the whole Court agreed to consider these claims under the auspices of Rule 5. It is thus of no small significance to the defendant or to this Court's established precedent that today's majority ignores our existing rule and instead attempts to apply the federal rule from MacDonald. See supra footnote 1.
With the foregoing explanation, we turn to the majority's rationale for its decision to ignore Beckwith's speedy trial and due process claims. The temptation here is to not even address the portion of the opinion entitled "Federal Decisions" for the simple reason that these decisions have absolutely no bearing on our own Rule 5. Even if the majority's erroneous reading of the three principle cases of Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984); United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); and Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) were correct, these cases would not control the present case. Surely the majority does not mean to imply that this Court is bound by a rule developed by federal appellate courts for their own internal use. With all due deference we have our own final judgment rule and we are obligated to apply it as written unless and until it is properly altered by a majority of the Justices of this Court.
Still, certain fallacies and internal inconsistencies in the majority's reasoning bear mentioning. First, the majority finds "much wisdom in the principles enunciated in Federal Court on questions such as those raised here." Then just a few pages later the opinion recognizes, as it must, that our Rule 5 is more expansive than its federal counterpart. See also American Elec. v. Singarayar, 530 So.2d 1319, 1322 (Miss. 1988). This inconsistency illustrates the problem that pervades the entire majority opinion. If our rule is different from the federal rule, how can federal decisions construing the federal rule provide any precedent for applying our rule?
Secondly, the persuasiveness of the majority's argument is further undercut by the fact that its federal analog is not up to date. Recent cases cast doubt on the continuing vitality of United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978). See Doggett v. United States, ___ U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); see also, United States v. Shell, 974 F.2d 1035 (9th Cir.1992). Without wading in too deep in an area that we consider inapplicable, it should be pointed out that the MacDonald rule is primarily based on the need to conduct a trial in order to quantify prejudice for evaluating a speedy trial claim. As the portions quoted by the majority indicate, evidence of the U.S. Supreme Court's concern that pre-trial prejudice would be too speculative can be found throughout the MacDonald opinion. For example:
The resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. As is reflected in the decisions of this Court, *1160 most speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial.
Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial  when prejudice can be better gauged  would also be denied.
United States v. MacDonald, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978).
The MacDonald court's concerns were understandable given the facts of that particular case. Jeffrey MacDonald (an officer in the U.S. Army) was formally indicted on January 24, 1975, for the murders of three family members that occurred on February 17, 1970. Much of the delay was attributable to an aborted court-martial proceeding and a subsequent extended investigation by the Central Intelligence Division. The case was submitted to a civilian grand jury in August of 1974, within a year of the last report from the CID. The indictment was returned the following January. There was no indication of any missing witnesses or any other concrete harm to MacDonald's defense, nor was the delay attributable to the government outrageously protracted. Understandably, the court declined to consider the speedy trial issue before trial.
Two recent federal court cases make it abundantly clear that prejudice may be presumed without a trial in cases where an excessive period of delay is attributable to the government. See Doggett v. United States, ___ U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); United States v. Shell, 974 F.2d 1035 (9th Cir.1992). In the first case, the defendant, Marc Gilbert Doggett, was indicted on drug related charges on February 22, 1980. An attempted arrest on March 18, 1980 was unsuccessful because of Doggett's prior flight to Panama. He was placed in custody in Panama on local charges and U.S. officials were led to believe that he would be turned over to them upon release. Instead, he was freed and immediately took up residence in Colombia. Law enforcement officers in the U.S. were originally not aware of this. After returning to this country on September 25, 1982, Doggett went to college, got a job and began to make a living openly under his own name. During this time no efforts were made to locate or apprehend him. Approximately six years after his return to this country, a government check of credit records provided officials with Doggett's home address. He was arrested on September 5, 1988, and he pled guilty on the condition that he be allowed to pursue his speedy trial claim. The following quotation from Doggett includes the Court's holding that prejudice is now to be presumed in cases where a protracted delay is attributable to the government, as well as some of the relevant legal analysis:
As an alternative to limiting Barker, the Government claims Doggett has failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence. Though Doggett did indeed come up short in this respect, the Government's argument takes it only so far: consideration of prejudice is not limited to the specifically demonstrable, and, as it concedes, affirmative proof of particularized prejudice is not essential to every speedy trial claim. Barker explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony `can rarely be shown.' And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of *1161 relevant facts, and its importance increases with the length of delay.
* * * * * *
This brings us to an enquiry into the role that presumptive prejudice should play in the disposition of Doggett's speedy trial claim. We begin with hypothetical and somewhat easier cases and work our way to this one.
Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question. Thus, in this case, if the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense.
The Government concedes, on the other hand, that Doggett would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial. That we cannot doubt. Barker stressed that official bad faith in causing delay will be weighed heavily against the Government, and a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal.

Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. It was on this point that the Court of Appeals erred, and on the facts before us, it was reversible error.

Barker made it clear that `different weights [are to be] assigned to different reasons' for delay. Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.
To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8 1/2 years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays `extraordinary.' When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the *1162 presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.

Doggett v. United States, ___ U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citations and footnotes omitted; emphasis added).
As the MacDonald language quoted supra indicates, the need to validate prejudice in a trial setting was one of the foundations of the holding in that case. Obviously Doggett eliminates the need to stand trial to show actual prejudice in cases involving protracted delays. The delay in Beckwith's case exceeds 27 years, more than three times the 8 1/2 year delay in Doggett.
Further evidence that the foundation of MacDonald is crumbling may be found in United States v. Shell, 974 F.2d 1035 (9th Cir.1992), a recent Ninth Circuit decision following Doggett. In this case, the defendant, Shell, was indicted in 1984 on charges related to passport falsification. For five years the government made no effort to locate or arrest Shell because law enforcement agents misplaced his files. However, the search was renewed in 1989 and Shell was arrested in Guam in 1990. The district court judge dismissed the indictment based on a pretrial motion by the defense. The Ninth Circuit first reversed based on lack of prejudice but on rehearing, after considering the Doggett holding, affirmed the dismissal even though Shell conceded that most of the essential witnesses and documentary evidence were still available. The important language from Shell reads as follows:
Shortly after our opinion was filed, the Supreme Court held that a defendant was not always required to show actual prejudice to prove a violation of his speedy trial rights. [citing Doggett] The Court modified the Barker v. Wingo four-part test, and held that no showing of prejudice is required when the delay is great and attributable to the government.

In Doggett, the defendant was arrested eight years after he was indicted. The Court found that his inability to demonstrate actual prejudice did not defeat his speedy trial claim because such excessive delay presumptively compromised the trial's reliability in unidentifiable ways.
* * * * * *
Five years delay attributable to the government's mishandling of Shell's file, like the eight year delay in Doggett, creates a strong presumption of prejudice.
United States v. Shell, 974 F.2d 1035, 1036 (9th Cir.1992).
These two cases are a clear indication of the direction that federal courts have taken on speedy trial claims involving protracted delay. Based on these cases, it appears probable that, for purposes of interlocutory review, speedy trial and double jeopardy claims will soon be considered sui generis. Eliminating the need to show actual prejudice moves a pretrial speedy trial claim to the same collateral and independent status of a double jeopardy claim.
Finally we point out that the precedents relied on by the majority were out there at the time Beckwith's interlocutory appeal was granted by this Court en banc. Both parties expended great effort in reliance on the apparent finality of the order granted by a majority of the Court, and on the clear language of Rule 5. To now reverse that decision, and to retroactively apply a new rule for interlocutory appeals, at the behest of less than a majority of the Court, is unfair in the extreme and reflects poorly on this Court's commitment to follow precedent. Litigants should not be blindsided on issues that they can only regard as previously settled. We have at our disposal the means to decide these issues as we agreed to do and as we have done in similar cases in the past. See footnote 1. To do otherwise at this point would be to shirk our obligations to the parties and the public.

MERITS OF DOUBLE JEOPARDY CLAIM
Beckwith claims that the State has violated his Fifth Amendment right to be free *1163 from being twice put in jeopardy for the same offense.[2] We are firmly convinced that a third trial after two previous attempts to convict, a nolle prosequi, and a 21 year delay would violate his right to be free from double jeopardy.
We note at the outset that the majority cites no controlling precedent for sending Beckwith to trial. Instead, it attempts to distinguish two persuasive cases where retrial was held to be barred. McNeal v. Hollowell, 481 F.2d 1145 (5th Cir.1973); Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981). This is pointed out not to disparage the reasoning of the majority but only to reinforce the point that there is no controlling precedent for facts as egregious as the ones we are faced with today. The double jeopardy consequences of reindictment 21 years after a voluntary State nolle prosequi, which itself was almost five years after two mistrials, have simply not been decided by our Court or a controlling federal court. We suggest that no precedent exists because any similar attempt to put a defendant in jeopardy a third time would be so patently violative of the right not to be twice put in jeopardy of life and limb, that no prosecutor would appeal an adverse ruling from a trial court.
Under these circumstances, the wisest course we, as a Court, can take is to endeavor to safeguard the individual rights protected by the Constitutions of the United States and Mississippi as we perceive those rights to be. Toward that end, we begin by examining the purpose of the Double Jeopardy clause. The following is an oft-quoted statement on point:
The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
Crist v. Bretz, 437 U.S. 28, 35, 98 S.Ct. 2156, 2160, 57 L.Ed.2d 24 (1978) (quoting Green v. United States, 355 U.S. 184, 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)); Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981).
Thus it is clear that the Double Jeopardy guarantee protects a broader range of individual liberties than the majority suggests. In addition to protecting the right to have a case finally decided by the jury impanelled to do so, the guarantee also places limits on how many times an individual can be subjected to prosecution for the same offense. The protection afforded by this right to be free from "repeated attempts to convict" is not absolute. Successive criminal proceedings can be brought where the prior proceedings ends because some manifest necessity prevents a final verdict of conviction or acquittal. Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981). But as the Court in Jones went on to say:
The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee.
Id. at 1316. (quoting United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970) (emphasis added).
We submit that lack of governmental preparedness to continue a prosecution five years after trial also implicates double jeopardy and speedy trial interests in being free from governmental harassment.
Another interest protected by the double jeopardy clause is the defendant's right to be free from governmental manipulation of individual Constitutional rights. As stated by the Fifth Circuit:
The second line of precedent recognized in [Illinois v.] Somerville, [410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)], however, is potentially more useful to us. The Supreme Court there noted that the declaration of a mistrial *1164 based on `a rule or a defective procedure that [lends] itself to prosecutorial manipulation' would be an entirely different case. Presumably such a case would require the invocation of the Fifth Amendment's bar to reprosecution.
McNeal v. Hollowell, 481 F.2d 1145 (5th Cir.1973).
This Court has likewise acknowledged the double jeopardy implications of conduct that manipulates individual Constitutional rights:
Harassment of an accused by successive prosecutions or declaration of mistrial so as to afford the prosecution a more favorable opportunity to convict are examples of when jeopardy attaches. ...
Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981) (quoting United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1970)) (emphasis added).
Again we submit that there is no distinction on principle between prosecutorial manipulation of Constitutional rights at trial and manipulation five years after trial, or 21 years after a nolle prosequi for that matter. In either circumstance the Double Jeopardy Clause provides a mechanism for remedying violations.
The majority errs when it obstinately refuses to recognize any Constitutional protection against governmental harassment through protracted delays. Instead it steadfastly clings to the idea that the only interest protected by the Double Jeopardy clause is the defendant's "valued right to have his trial completed before that tribunal and that jury." McNeal v. Hollowell, 481 F.2d 1145, 1149 (5th Cir.1973); Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981). This interest was discussed at some length in the majority opinion as a distinguishing feature between the current case and the Jones and McNeal cases. There can be no doubt that there was no jury sworn and no possibility of acquittal at the time of the nolle prosequi of the indictment in 1969. However, the logic of the majority takes it only so far. To merely distinguish the existing cases barring retrial is not a sufficient basis for concluding that Beckwith must be retried. This case presents unique facts that directly implicate the policies underpinning the double jeopardy provision and the speedy trial guarantee of the Mississippi and United States Constitutions. Jones v. State, supra.
We now turn our efforts towards applying the law to the facts before us. Jeopardy attaches when a jury is sworn and impaneled. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981). Thereafter jeopardy continues unless a supervening event terminates it. Richardson v. United States, 468 U.S. 317, 325, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984). Once terminated, the Double Jeopardy clause bars further trial for the same offense. Id.
Beckwith was first placed in jeopardy when the jury was sworn in at his first trial in February of 1964. He was tried again in April of 1964. Because a deadlocked jury creates a "manifest necessity" for a mistrial, the first two attempts to convict produced no event sufficient to terminate jeopardy. Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981). Thus, the original jeopardy was clearly still intact at the time the nolle prosequi was requested by the state and granted by an order of the Circuit Court on March 10, 1969.
The majority begins its consideration of the double jeopardy consequences of the nolle prosequi by quoting Art. 3, § 22 of our Constitution which states:
No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution.

The second portion of the provision is clearly at odds with the Fifth Amendment as interpreted by the U.S. Supreme Court. For example, in the Perez case, where the defendant's first trial ended with a hung jury, the Court said:
We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a *1165 manifest necessity for the act, or the ends of public justice would otherwise be defeated.
United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).
The issue was clearly addressed by the U.S. Supreme Court in Green v. United States:
Moreover, it is not even essential that a verdict of guilt or innocence be returned for a defendant to have once been placed in jeopardy so as to bar a second trial on the same charge.
Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (quoted by this Court in Jones v. State, 398 So.2d 1312, 1314 (Miss. 1981)).
When our state Constitutional provision was adopted, the Fifth Amendment double jeopardy clause applied only against the federal government. The various states were free to adopt more or less restrictive double jeopardy provisions or to adopt no provision at all. Under this arrangement, federal courts would intervene under authority of the Fourteenth Amendment Due Process clause only where the second jeopardy created "a hardship so acute and shocking that our polity will not endure it." Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Against this backdrop all of the cases cited by the majority in support of its position on the effect of the nolle prosequi were decided. See Walton v. City of Tupelo, 229 Miss. 193, 90 So.2d 193 (1956); Smith v. State, 158 Miss. 355, 128 So. 891 (1930); Gordon v. State, 127 Miss. 396, 90 So. 95 (1921); see also State v. Thornhill, 251 Miss. 718, 171 So.2d 308 (1965); State v. Kennedy, 96 Miss. 624, 50 So. 978 (1910).
Predictably, however, the Supreme Court's attitude towards this important individual right changed. In 1969, the Court held:
... we today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment. Insofar as it is inconsistent with this holding, Palko v. Connecticut is overruled.
See Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).
After this decision our § 22 could never again be applied as written or as it had been applied in the cases relied on by the majority. The precedential value of cases holding that a nolle prosequi did not bar reprosecution because it was not an acquittal or a conviction was swept away. See e.g., Smith v. State, 158 Miss. 355, 128 So. 891 (1930). The effect of this decision was unequivocally acknowledged by this Court in Jones v. State, 398 So.2d 1312, 1315 (Miss. 1981), wherein we applied federal principles, specifically the "manifest necessity" doctrine. The cases relied on by the majority were decided in a legal environment that was irrevocably (from this Court's perspective) changed by the U.S. Supreme Court in 1969.
Under current Constitutional requirements, there is no doubt that the defendant's double jeopardy rights have been violated. The relevant facts are compelling. First Beckwith twice stood trial for the same offense in 1964. Second, the State voluntarily brought the original legal proceedings to a close in 1969 by actively seeking the order of nolle prosequi. That the prosecution now seeks to gain an advantage from the procedures it invoked is beyond question. The manipulation is evident from reading the State's brief. First the State argues that any speedy trial violation that existed in 1969 evaporated with the entry of the nolle prosequi in 1969. Next the State argues, in effect, that the current social environment is more likely to yield a conviction than the one prevailing in 1969. These arguments clearly indicate that any current attempt to prosecute Beckwith would impermissibly benefit from the nolle prosequi. That the nolle prosequi was intended to be final is evidenced by the 21 year delay before the prosecution was resumed. There is nothing in the record to indicate that Beckwith had notice that the order was to be entered, nor is there is anything that would indicate that *1166 the dismissal was procured under any type of necessity, manifest or otherwise.
The only conclusion to be drawn from these facts is that the original jeopardy that attached in 1964 was terminated in 1969 when the State voluntarily concluded its proceedings in the absence of any manifest necessity. Under these circumstances, we may confidently hold that any prosecution now would allow the state, with all its resources and power, to repeatedly attempt to convict Beckwith for the same alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. This is a violation of the appellant's right to be free from being twice put in jeopardy for the same offense as well as a denial of a speedy trial the likes of which no citizen should be forced to endure. The decision of the lower court should be reversed and the defendant discharged so that this case can be finally put to rest after 29 years.

THE PRACTICAL EFFECTS OF TODAY'S DECISION
The majority could hardly be more correct than when it states that the citizens of Mississippi are entitled to an effective system for enforcing criminal laws. However, the choices made by the framers of our federal and state Constitutions, and recognized as imminently correct by our diverse citizenry today, reflect an unwavering belief that certain core rights of individuals must be safeguarded. The costs of this safeguarding, in terms of emotional anguish, are often high, especially when an individual who has earned the antipathy of many finds refuge, from what are presumed to be his just deserts, in the Bill of Rights. The benefits of this choice, however, are also great as they empower all Americans to pursue their private goals secure in the knowledge that limits exist on the powerful hand of the government.
The mission of the judiciary under this system is to ensure that government can function effectively for the governed, while at the same time carefully evaluating possible infringements on Constitutionally protected rights and freedoms. What must be remembered is that all suffer when our government abuses its power. No person's freedoms are any more secure than those of the most despicable among us.
Today, the majority conveniently manages to duck two important issues in this case by backpedaling on our previously settled rule for interlocutory appeals. See Miss.S.Ct.R. 5. On August 26, 1992, five members of this Court voted to grant the defendant's petition and review his Constitutional claims. Now roughly four months later that decision is effectively reversed by only four members of the Court. This judicial "now you see it, now you don't" is accomplished by eviscerating Rule 5 and by overruling over twenty well-reasoned cases prior to and since its adoption. See supra footnote 1.
The majority, however, is wrong to rely so heavily on the federal rule for interlocutory appeals when our own rule better serves the needs of this Court. It is wrong to attempt to elevate its personal opinion about interlocutory appeals to the level of a state Constitutional edict. But most of all it is wrong to callously sacrifice the rights of an individual for the sake of reshaping our procedural rules to further limit interlocutory appeals.
ROY NOBLE LEE, C.J., and PRATHER, J., join this opinion.
NOTES
[1] Rule 5 states in pertinent part:

(a) Petition for Permission to Appeal. An appeal from an interlocutory order may be sought if the order grants or denies certification by the trial court that a substantial basis exists for a difference of opinion on a question of law as to which appellate resolution may:
(1) Materially advance the termination of the litigation and avoid exceptional expense to the parties; or
(2) Protect a party from substantial and irreparable injury; or
(3) Resolve an issue of general importance in the administration of justice.
[2] 28 U.S.C.S. § 1291 reads in pertinent part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

28 U.S.C.S. § 1292 authorizes appeals from interlocutory decisions under certain limited circumstances.
[3] The Court's analysis was based upon Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), in which the Supreme Court granted certiorari to decide whether an appeal would be allowed from a district court order denying a defendant corporation's motion to require a shareholder plaintiff to post a security bond for court costs and attorney fees as required by a New Jersey statute. The Court found the order to be a "final decision" as contemplated by § 1291 and therefore appealable. The Court first noted: "Appeal gives the upper court a power to review, not one of intervention." "Nor does the statute [28 USCS 1291] permit appeals, even from fully consummated decision, where they are but steps toward final judgment in which they will merge." (Emphasis added) The Court then added:

This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. (Emphasis added)
... .
We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it. But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. (Emphasis added)
Cohen, 337 U.S. at 546, 69 S.Ct. at 1225, 93 L.Ed. at 1536.
[4] Sanford v. Board of Sup'rs, Covington County, 421 So.2d 488, 490-91 (Miss. 1982); Miller Transporters Ltd. v. Johnson, 252 Miss. 244, 249, 172 So.2d 542, 544 (1965); Bradley v. Holmes, 242 Miss. 247, 25-53, 134 So.2d 494, 495-96 (1961); McMahon v. Milam Mfg. Co., 237 Miss. 676, 679, 115 So.2d 328, 330 (1959); State, ex rel. Patterson v. Autry, 236 Miss. 316, 320-21, 110 So.2d 377, 378 (1959); J.R. Watkins Co. v. Guess, 196 Miss. 438, 443, 17 So.2d 795, 796 (1944); Jackson v. Gordon, 194 Miss. 268, 273, 11 So.2d 901, 902 (1943); Craig v. Barber Bros. Contracting Co., 190 Miss. 182, 187, 199 So. 270, 272 (1941); Jackson County v. Meaut, 185 Miss. 235, 238, 189 So. 819, 820 (1939); Worley v. Pappas, 161 Miss. 330, 332, 135 So. 348, 349 (1931); Shapleight Hardware Co., Inc. v. Brumfield, 159 Miss. 175, 179, 130 So. 98, 98-99 (1930); McClanahan v. O'Donnell, 148 Miss. 478, 114 So. 336, 338 (1927); Jones v. Cashin, 133 Miss. 585, 590, 98 So. 98, 99 (1923); State v. Poplarville Sawmill Co., 119 Miss. 432, 441, 81 So. 124, 127 (1919); Bridges v. Board of Supervisors of Clay County, 57 Miss. 252, 254 (1879); Dismukes v. Stokes, 41 Miss. 430, 432-33 (1867); Steele v. Shirley, 9 S. & M. 382 (1848).
[5] Now repealed by Laws, 1991, ch. 573, § 141, effective from and after July 1, 1991.
[6] Nelson v. Ethridge, 271 So.2d 730 (Miss. 1973); Seaney v. Seaney, 218 So.2d 5 (Miss. 1969); Calmes v. Weill, 216 So.2d 418 (Miss. 1968); West v. Mechanical Services, Inc., 216 So.2d 174 (Miss. 1968); Management, Inc. v. Crosby, 186 So.2d 466 (Miss. 1966); Burns v. Arrington, 251 Miss. 247, 169 So.2d 831 (1964); Farrar v. Phares, 232 Miss. 391, 99 So.2d 594 (1958).
[7] Craig v. Barber, 524 So.2d 974 (Miss. 1988); Sonford Products Corp. v. Freels, 495 So.2d 468 (Miss. 1986); Kilgore v. Barnes, 490 So.2d 895 (Miss. 1986).
[8] Only in the dissent in City of Mound Bayou v. Johnson, 562 So.2d 1212 (Miss. 1990) (Hawkins, P.J., dissenting, at 1221) has its constitutional validity been assessed.
[9] This is not to mention ignoring the wisdom of decisions of this Court covering a period of 125 years prior to our decisions in Holland, none of which have been overruled. See Footnote 4, Lemly v. State, 69 Miss. 628, 12 So. 559 (1892).
[10] Jones v. State, 250 Miss. 186, 164 So.2d 799 (1964); Bell v. State, 220 So.2d 287 (Miss. 1969); Smith v. State, 220 So.2d 313 (Miss. 1969); Cummings v. State, 219 So.2d 673 (Miss. 1969); Brown v. State, 217 So.2d 521 (Miss. 1969); Saucier v. State, 259 So.2d 484 (Miss. 1972); Craig v. State, 284 So.2d 57 (Miss. 1973); Blackwell v. Sessums, 284 So.2d 38 (Miss. 1973); Wells v. State, 288 So.2d 860 (Miss. 1974); Macon v. State, 295 So.2d 742 (Miss. 1974); Myers v. State, 296 So.2d 695 (Miss. 1974); Page v. State, 295 So.2d 279 (Miss. 1974); Edmond v. State, 312 So.2d 702 (Miss. 1975); Campbell v. State, 309 So.2d 172 (Miss. 1975); Harrington v. State, 336 So.2d 721 (Miss. 1976); Yates v. State, 342 So.2d 312 (Miss. 1977); Durham v. State, 377 So.2d 909 (Miss. 1979); Speagle v. State, 390 So.2d 990 (Miss. 1980); Atkinson v. State, 392 So.2d 205 (Miss. 1980); Salter v. State, 387 So.2d 81 (Miss. 1980); State v. Davis, 382 So.2d 1095 (Miss. 1980); Turner v. State, 383 So.2d 489 (Miss. 1980); Davis v. State, 406 So.2d 795 (Miss. 1981); Diddlemeyer v. State, 398 So.2d 1343 (Miss. 1981); Jones v. State, 398 So.2d 1312 (Miss. 1981); Smith v. State, 394 So.2d 1340 (Miss. 1981); Saxton v. State, 394 So.2d 871 (Miss. 1981); Carlisle v. State, 393 So.2d 1312 (Miss. 1981); Perry v. State, 419 So.2d 194 (Miss. 1982); Ransom v. State, 435 So.2d 1169 (Miss. 1983); Brady v. State, 425 So.2d 1347 (Miss. 1983); Young v. State, 425 So.2d 1022 (Miss. 1983); Gray v. State, 481 So.2d 763 (Miss. 1985); In re W.R.A, 481 So.2d 280 (Miss. 1985); Nations v. State, 481 So.2d 760 (Miss. 1985); Darby v. State, 476 So.2d 1192 (Miss. 1985); Burgess v. State, 473 So.2d 432 (Miss. 1985); Plummer v. State, 472 So.2d 358 (Miss. 1985); Bailey v. State, 463 So.2d 1059 (Miss. 1985); Kinzey v. State, 498 So.2d 814 (Miss. 1986); Beavers v. State, 498 So.2d 788 (Miss. 1986); Lightsey v. State, 493 So.2d 375 (Miss. 1986); Smith v. State, 489 So.2d 1389 (Miss. 1986); Vickery v. State, 535 So.2d 1371 (Miss. 1988); Arnett v. State, 532 So.2d 1003 (Miss. 1988); Fisher v. State, 532 So.2d 992 (Miss. 1988); Livingston v. State, 525 So.2d 1300 (Miss. 1988); Dedeaux v. State, 519 So.2d 886 (Miss. 1988); Trotter v. State, 554 So.2d 313 (Miss. 1989); Smith v. State, 550 So.2d 406 (Miss. 1989); Conerly v. State, 544 So.2d 1370 (Miss. 1989); Mitchell v. State, 572 So.2d 865 (Miss. 1990); Jaco v. State, 574 So.2d 625 (Miss. 1990); Flores v. State, 574 So.2d 1314 (Miss. 1990); Yarber v. State, 573 So.2d 727 (Miss. 1990); Galloway v. State, 574 So.2d 1 (Miss. 1990); Handley v. State, 574 So.2d 671 (Miss. 1990); Moore v. State, 556 So.2d 1031 (Miss. 1990); Spencer v. State, 592 So.2d 1382 (Miss. 1991); Ford v. State, 589 So.2d 1261 (Miss. 1991); Flores v. State, 586 So.2d 811 (Miss. 1991); Corley v. State, 584 So.2d 769 (Miss. 1991); Adams v. State, 583 So.2d 165 (Miss. 1991); Wiley v. State, 582 So.2d 1008 (Miss. 1991); Anderson v. State, 577 So.2d 390 (Miss. 1991); Barnes v. State, 577 So.2d 840 (Miss. 1991); State v. Ferguson, 576 So.2d 1252 (Miss. 1991); Folk v. State, 576 So.2d 1243 (Miss. 1992); Esparaza v. State, 595 So.2d 418 (Miss. 1992); and McGee v. State, 608 So.2d 1129 (Miss. 1992).
[11] Three other cases which came to us as interlocutory appeals involved serious double jeopardy claims: Griffin v. State, 584 So.2d 1274 (Miss. 1991); Spann v. State, 557 So.2d 530 (Miss. 1990); Griffin v. State, 545 So.2d 729 (Miss. 1989). As fully set forth in Part III, Double Jeopardy, infra, these were in fact appeals from final judgments, although denominated interlocutory appeals.

In re Brown, 478 So.2d 1033 (Miss. 1985), involved an independent right of a state's witness not to be required to undergo a blood transfusion, analogous to Jaquith v. Beckwith, 248 Miss. 491, 157 So.2d 403 (1963), infra, as well as a final order contemplated by Abney v. United States. In the Interest of W.R.A., 481 So.2d 280, 283 (Miss. 1985), was an appeal from a "final order."
Today's holding does no violence to any of these decisions.
[12] Jaquith v. Beckwith is a good example of the question. In that case the Hinds County Circuit Court, over the strenuous objection of defense counsel, ordered the defendant committed to the Mississippi State Hospital at Whitfield to determine his competency to stand trial. The evidentiary basis for the commitment order was minimal.

Beckwith applied for a writ of habeas corpus in the Rankin County Circuit Court. In affirming his release from the mental hospital, we noted first that interlocutory orders could not be taken from preliminary orders of the circuit court; also, that a writ of habeas could not perform the functions of a writ of error on appeal. We then noted, however, that the order committing him was beyond the authority of the court, and if Beckwith were denied a remedy to test the order, "a right of appeal after trial and final judgment would be meaningless." We held, "A proceeding to enforce a right of personal liberty by means of a writ of habeas corpus is civil and not criminal." 248 Miss. at 503, 157 So.2d at 409. Jaquith v. Beckwith was decided in this State 14 years before Abney.
[1] The exact requirements of Mississippi Supreme Court Rule 5.
[1] The following is a list of the cases that led to and followed the adoption of Rule 5. Though not all granted interlocutory appeals, each and every one acknowledged our authority to hear interlocutory appeals when the criteria now embodied in the Rule are satisfied: Page v. State, 607 So.2d 1163 (Miss. 1992); Haynes v. Anderson, 597 So.2d 615 (Miss. 1992); Crawford v. Wall on Behalf of Estate of Franks, 593 So.2d 1014 (Miss. 1992); City of Mound Bayou v. Johnson, 562 So.2d 1212 (Miss. 1990); McDaniel v. Ritter, 556 So.2d 303 (Miss. 1989); Tillotson v. Anders, 551 So.2d 212 (Miss. 1989); Griffin v. State, 545 So.2d 729 (Miss. 1989); State Oil & Gas Bd. v. McGowan, 542 So.2d 244 (Miss. 1989); Donald v. Reeves Transport Co. of Calhoun, GA., 538 So.2d 1191 (Miss. 1989); Atwood v. Hicks by Hicks, 538 So.2d 404 (Miss. 1989); Gibson v. Manuel, 534 So.2d 199 (Miss. 1988); State v. Europa Cruise Line, Ltd., 528 So.2d 839 (Miss. 1988); American Elec., a Div. of FL Industries v. Singarayar, 530 So.2d 1319 (Miss. 1988); Craig v. Barber, 524 So.2d 974 (Miss. 1988); Mississippi State Bar v. Attorney L, 511 So.2d 119 (Miss. 1987); Amer. Tobacco Co. v. Evans, 508 So.2d 1057 (Miss. 1987); Johnson v. Ladner, 514 So.2d 327 (Miss. 1987); State v. Caldwell, 492 So.2d 575 (Miss. 1986); Sonford Products Corp. v. Freels, 495 So.2d 468 (Miss. 1986); and Southern Farm Bureau Cas. Ins. v. Holland, 469 So.2d 55 (Miss. 1984).
[2] The familiar provision of the Fifth Amendment provides, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."