MODIFIED OPINION ON MOTION FOR REHEARING[1]
[1] This opinion is substituted for that originally issued. The rehearing motion is granted.
¶ 1. Marcus Roberson was indicted and tried for two murders. His first trial ended in a mistrial, as did his second. Roberson then moved for dismissal, asserting his double jeopardy rights. The lower court denied Roberson's motion. He appeals from the denial, but we affirm.
¶ 2. Roberson was indicted for multiple counts of murder that grew out of a gang-related shooting at a hotel in Clarksdale. A hung jury after his trial in November 2000 caused a mistrial to be declared. At a second trial in March of 2001, a prosecution witness testified to a statement not provided to Roberson in discovery. Roberson alleged discovery violations and requested a mistrial. The trial judge found that discovery violations had indeed occurred and granted a second mistrial.
¶ 3. Roberson sought dismissal of the indictment on double jeopardy grounds. The lower court denied his request. Roberson's appeal has been deflected here.
 DISCUSSION 1. Jurisdiction
¶ 4. Since this is an appeal simply from the denial of a motion to dismiss, an obvious issue is whether we have jurisdiction to consider it. Generally, an appeal may be taken in a criminal case only from a final judgment. Miss. Code Ann. § 9-3-9 (Rev. 2002). However, in certain limited circumstances, we may entertain interlocutory appeals.Beckwith v. State, 615 So.2d 1134, 1142 (Miss. 1992); M.R.A.P. 5.
¶ 5. An immediate appeal regarding a denied double jeopardy claim is permitted.
 [A defendant's] rights under a double jeopardy claim in this case go beyond his right not to be convicted, and are of immediate urgency, justifying determination now. Because of the unique nature of the denial by a circuit court of a colorable double jeopardy claim, involving as it does the Constitutional right not to be prosecuted for the offense, it is final. This Court is authorized to treat it as a "final judgment" in a civil action under Miss. Code Ann. §§ 11-51-3
(Supp. 1992), which authorizes an appeal from a final judgment, and Miss. Code Ann. §§ 9-3-9 (Supp. 1992), which gives this Court jurisdiction of an appeal from any final judgment in the circuit court.
Beckwith, 615 So.2d at 1146; see also Abney v. United States, 431 U.S. 651
(1977).
¶ 6. Roberson's claim is properly before this Court.
 2. Double jeopardy
¶ 7. Roberson's four-pronged challenge may be collapsed into a single *Page 534 
dispositive issue: have his double jeopardy rights been violated?
¶ 8. Both the federal and the state constitutions protect criminal defendants from being placed twice in jeopardy. U.S. Const. amend. V; Miss. Const. art. 3, § 22 (1890). The protection begins "the moment the trial jury is selected and sworn to try the case." Jones v. State,398 So.2d 1312, 1314 (Miss. 1981).
¶ 9. Here, after a jury was impaneled, the proceedings ended in mistrial before a verdict was obtained. In order to avoid a double jeopardy bar following a State-requested mistrial, it must be shown that there was a manifest necessity for granting the motion, but with a "degree of discretion" given the court in determining whether that necessity exists. Oregon v. Kennedy, 456 U.S. 667, 672 (1982). Generally, criminal defendants who request the mistrial are barred from subsequently asserting double jeopardy violations. Jenkins v. State,759 So.2d 1229, 1234 (Miss. 2000). In such circumstances, there is no double jeopardy defect in a new trial unless "the governmental conduct in question is intended to `goad' the defendant" into asking for a mistrial. Oregon, 456 U.S. at 676.
¶ 10. Some prosecutors might be tempted to seek a new beginning when they are dissatisfied with the direction that a trial has taken. Therefore, double jeopardy protections arise if the prosecutorial error was a purposeful attempt by the government to end the trial in order to have another, later and presumably better opportunity to convict the defendant.
¶ 11. Reviewing the record before us, we find that discovery violations occurred. The basis for Roberson's requested mistrial was the failure of the State to disclose the anticipated testimony of Floyd Williams, a witness who was present at the time of the shootings. The discovery provided to Roberson indicated that Williams was present when an eyewitness excitedly ran over from the scene. However, on the stand, Williams testified that the eyewitness stated "that [the defendant] had just shot Frank." In a conference out of the jury's presence, the prosecutor asserted that he had orally informed defense counsel of the statement either on the previous Friday or a few days later on Monday. The testimony was given on the following Wednesday. Defense counsel denied that this information had been given him. It was also alleged that despite requests, the prosecutor did not provide addresses or other means to contact the witnesses who would be making these assertions.
¶ 12. The discrepancy between the explanation given in discovery that Williams had merely seen a frightened eyewitness and the testimony that identified Roberson as the shooter is substantial. After an initial hearing and then a continuation the next morning with an oral argument, the trial court granted a mistrial. The court also indicated that it would have a hearing on the fact that the district attorney's office had "cost the county a lot of money again."
¶ 13. Roberson alleges that this violation reveals "purposeful prosecutorial manipulation of its disclosure obligation." Roberson also contends that the violation threatened "the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict" him. Divans v.California, 434 U.S. 1303, 1303-04 (1977).
¶ 14. Roberson bases his claim on the following facts:
 (a) The prosecution's discovery disclosures were misaddressed to Roberson's counsel. Roberson contends that *Page 535 
because other communications were correctly sent to his attorney's physical address, the sending of discovery to an improperly numbered post office box demonstrates purposeful manipulation by the State.
 (b) A meeting between Roberson's counsel and one of the prosecution's investigators yielded information not yet disclosed in discovery. Roberson argues that this demonstrates an intention by the district attorney to "shift the blame for not providing timely supplemental discovery on the police department."
 (c) The prosecution never provided Roberson with Floyd Williams' address and phone number, despite being aware of his availability as the son of Coahoma County's chief deputy. Williams subsequently provided an affidavit that he was interviewed by Roberson's counsel immediately prior to trial.
¶ 15. Roberson submits that the lower court applied the incorrect legal standard to these facts in its assessment that "the discovery violation by the State was due to carelessness or negligence and was not intentional." Roberson is correct in asserting that an improper prosecutorial intent may be inferred from the objective circumstances of the case. Oregon, 456 U.S. at 675. That opinion also provides that a trial court's fact finding that no intentional prosecutorial action occurred, if supported in the record, will be upheld. Id. at 679.
¶ 16. There was no persuasive evidence that the State intended to "goad" or "provoke" Roberson into seeking a mistrial. State v. Blenden,748 So.2d 77, 90 (Miss. 1999). Consequently, his double jeopardy rights are not violated if there is a new trial.
¶ 17. THE ORDER OF THE CIRCUIT COURT OF COAHOMA COUNTY DENYING THEDEFENDANT'S MOTION TO DISMISS INDICTMENT IS AFFIRMED. COSTS ARE ASSESSEDTO COAHOMA COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS,AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.