# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01345-COA

**CHARLES E. BLAKE A/K/A CHARLES BLAKE**  **APPELLANT**
**A/K/A CHARLES EDWARD BLAKE A/K/A**
**CHARLES ED BLAKE**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

DATE OF JUDGMENT:          09/21/2017
TRIAL JUDGE:               HON. ALBERT B. SMITH III
COURT FROM WHICH APPEALED: COAHOMA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   OFFICE OF STATE PUBLIC DEFENDER
                           BY: GEORGE T. HOLMES
                           PHILLIP BROADHEAD
ATTORNEYS FOR APPELLEE:    OFFICE OF THE ATTORNEY GENERAL
                           BY: JEFFREY A. KLINGFUSS
                              ABBIE EASON KOONCE
DISTRICT ATTORNEY:         BRENDA FAY MITCHELL
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 12/04/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., GREENLEE AND WESTBROOKS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     A jury sitting before the Coahoma County Circuit Court found Charles Edward Blake guilty of sexual battery of a child while in a position of trust or authority.  The circuit court sentenced Blake to thirty years in the custody of the Mississippi Department of Corrections (MDOC).  According to Blake, (1) he experienced double jeopardy because he was convicted incident to a second trial that occurred after his previous trial ended in a mistrial; (2) his trial

counsel was ineffective for a number of reasons; (3) there was insufficient evidence that he was guilty of the conduct alleged in the indictment; and (4) the jury's verdict was contrary to the overwhelming weight of the evidence. Finding no error, we affirm the circuit court's judgment.

FACTS AND PROCEDURAL HISTORY

¶2.    While walking home from school during late 2012, five-year-old John[1] told his father that he did not want to go home because Blake might be there. John then described Blake's attempt to perform oral sex on him and other forms of inappropriate touching. John's parents immediately called authorities, and John was eventually interviewed by Meredith Rawl, the "Program Director of Victim Services and Outreach out of Family Crisis Services in Oxford." John was initially apprehensive during Rawl's "forensic interview," but he ultimately told Rawl that Blake had performed oral sex on him and that he had sat on Blake's lap while Blake was undressed.

¶3.    Blake was indicted and charged with sexual battery of a child while in a position of "trust and authority." According to the indictment, Blake "plac[ed] his mouth, lips, and/or tongue" on John's genitals. Blake pleaded "not guilty" and went to trial.

¶4.    Blake's first trial began in late January 2016. John's parents and Rawl all testified and relayed John's claims that Blake had put his mouth on John's penis. Rawl also testified as an expert forensic interviewer that John's behavior and statements were "consistent with that of a child who's been sexually abused." When John testified, he described anal penetration.

---

[1] We substitute a pseudonym for the child's name to protect his identity.

Blake's attorney successfully moved for a mistrial because the prosecution had not disclosed during discovery that John was expected to describe anal penetration.

¶5. After the prosecution provided a supplemental discovery response outlining John's previously undisclosed anticipated testimony, Blake went to trial again. John's father testified that while Blake was staying with his family for a couple of days, he found Blake in John's room, and Blake was only wearing boxer shorts. John's father and Rawl both testified that John had described what amounted to Blake's performance of oral sex on John. That testimony contrasted with John's subsequent testimony that Blake had orally penetrated him.

¶6. During cross-examination, John admitted that he did not tell Rawl that Blake had orally penetrated him, and he explained that he "[m]ight've forgot [to tell Rawl that] when [he] was five" that Blake orally penetrated him. He also admitted that during the interview, he initially refused to say that Blake had touched him inappropriately. But on redirect, he reiterated: "[Blake] licked me in my ear when I was . . . I was in the bed. . . . And then he put his private part over on my butt and then in my mouth."

¶7. The State rested after John testified. Blake's attorney moved for a directed verdict because the indictment alleged that Blake had performed oral sex on John, and John testified that Blake had orally penetrated him. The prosecution responded that there was a dispute between John's testimony and the hearsay testimony presented by Rawl and John's father, and it was up to the jury to resolve that dispute. The circuit judge denied Blake's motion.

¶8. Blake chose to testify. He admitted that he had spent a couple of days with John's

3

family during the middle of September 2012, and he stayed with them again around October 2, 2012. But he denied that he was only wearing boxer shorts when John's father found him in John's room. Blake also said that nothing inappropriate happened between him and John. During cross-examination, Blake said he had a good relationship with John's family. He also said that John's allegations were somehow related to the fact that Blake's brother "brought all this -- this stuff up telling about I'm a child molester and all this kinda stuff . . . ." The defense rested after Blake testified.

¶9. After deliberating for approximately thirty minutes, which included the time that it took to watch the video of Rawl's forensic interview of John, the jury found Blake guilty. After a subsequent sentencing hearing, the circuit court sentenced Blake to thirty years in MDOC custody. Blake appeals.[2]

## DISCUSSION

### I. Double Jeopardy

¶10. Blake claims that because his first trial ended in a mistrial after the jury was selected and sworn to try the case, his second trial resulted in double jeopardy.

¶11. The Fifth Amendment to the United States Constitution prohibits the government from putting a defendant in jeopardy twice for the same offense. *Arizona v. Washington*, 434 U.S. 497, 503 (1978). The Mississippi Constitution also provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual

---

[2] Phillip W. Broadhead, clinical professor and director of the University of Mississippi School of Law Criminal Appeals Clinic, was appointed as Blake's appellate counsel.

acquittal or conviction on the merits to bar another prosecution." Miss. Const. art. 3, § 22. "But the federal constitutional right is broader, attaching even if the first trial is not completed." *Montgomery v. State*, 253 So. 3d 305, 310 (¶22) (Miss. 2018) (internal quotation mark omitted). The Mississippi Supreme Court has "recognized that the Fifth Amendment protection against double jeopardy attaches in any criminal proceeding in Mississippi at the moment the trial jury is selected and sworn to try the case." *Id*. (internal quotation mark omitted).

¶12. "[D]ischarging the jury before trial is complete does not always lead to a double-jeopardy bar." *Id*. at (¶23).

> Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, a criminal defendant's valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury.

*Id*. at 310-11 (¶23). "Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must demonstrate 'manifest necessity' for any mistrial declared over the objection of the defendant if he is to avoid the double-jeopardy bar." *Id*. at 311 (¶23).

¶13. But Blake's first trial did not end in a mistrial declared over Blake's objection. It ended with a mistrial granted *on Blake's motion*. "Generally, criminal defendants who request the mistrial are barred from subsequently asserting double jeopardy violations." *Roberson v. State*, 856 So. 2d 532, 534 (¶9) (Miss. Ct. App. 2003) (citing *Jenkins v. State*, 759 So. 2d 1229, 1234 (¶17) (Miss. 2000)). "In such circumstances, there is no double

5

jeopardy defect in a new trial unless the governmental conduct in question is intended to 'goad' the defendant into asking for a mistrial." *Id*. (internal quotation marks omitted). Said differently, Blake must show that the prosecution purposefully committed an error to force him to move for a mistrial. *Jenkins*, 759 So. 2d at 1234 (¶17). Blake has not satisfied that burden.

¶14. According to Blake, "the *conscious decision* of the prosecutor to *not* interview [John] was . . . a 'purposeful attempt' that directly resulted in the defense motion for a mistrial" and "the State created this set of circumstances through its *planned inaction* . . . ." We disagree. The prosecutor explained that it was his policy never to interview a child witness in such a case. It would be unreasonable and illogical to conclude that the prosecutor's policy was somehow intended to provoke defense counsel's motion for a mistrial in the event that John did not testify consistently with the statements he gave during Rawl's forensic interview. There was nothing to suggest that the prosecutor knew that John would describe anal penetration during Blake's first trial. There is nothing to support a conclusion that the prosecutor did not interview John prior to Blake's first trial in order to goad Blake's motion for a mistrial when John gave unanticipated testimony. Accordingly, "there [was] no double jeopardy defect in [Blake's] new trial . . . ." *Roberson*, 856 So. 2d at 534 (¶9).

## II. Assistance of Counsel

¶15. Blake claims that his trial counsel was ineffective:

> by failing to (a) file a motion to dismiss the case on grounds of Double Jeopardy before the second trial, (b) move, agree to, or not oppose at least six continuances, (c) . . . impeach the key witness for the prosecution on his prior inconsistent statements, (d) . . . challenge the State's MRE 803(25) hearsay

6

testimony in the second trial, (e) . . . ask for an instruction to the jury on prior inconsistent statements, (f) . . . submit any jury instructions for the trial court's consideration, (g) . . . provide the jury with the promised testimony from an expert witness to testify that there was no evidence of anal penetration, and (h) . . . get a definite ruling on an objection to the prosecuting attorney in closing argument.

Blake further argues that "this string of errors and omissions by defense counsel" results in cumulatively reversible ineffective assistance of counsel.

¶16.    "Ordinarily, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Jones v. State*, 252 So. 3d 574, 589 (¶60) (Miss. 2018). "A claim of ineffective assistance of counsel may be raised on direct appeal 'if such issues are based on facts fully apparent from the record.'" *Id*. (quoting M.R.A.P. 22(b)). We find that this issue must be dismissed without prejudice. Blake may apply for the Supreme Court's leave to raise his ineffective-assistance claims through a motion for post-conviction relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015).

III.    Sufficiency of the Evidence

¶17.    Next, Blake claims there was insufficient evidence to find him guilty of sexual battery. Blake notes that the indictment charged him with performing oral sex on John, but John testified that Blake committed the oral penetration. Blake reasons that he should not have been found guilty of sexual battery.

¶18.    Our appellate courts have consistently reviewed such challenges under the following standard:

> A motion for directed verdict challenges the sufficiency of the evidence, and the critical inquiry is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such

circumstances that every element of the offense existed. In judging the sufficiency of the evidence, the trial judge is required to accept as true all evidence that is favorable to the State, including reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant.

*Jackson v. State*, 68 So. 3d 709, 719 (¶32) (Miss. Ct. App. 2011) (citations and internal quotation marks omitted).

¶19. It was the jury's place to resolve matters regarding weight and credibility of witness testimony. The jury saw the video of John's forensic interview, and at that time John said that Blake had put his penis in John's mouth. The jury could have found that John's memory was fresher then than it was five years later when John was ten. Even if the jury found that John's trial testimony was more credible than his statements during the forensic interview, the variance between the conduct alleged in the indictment and the proof at trial was immaterial.

¶20. The Mississippi Supreme Court reviewed a very similar set of circumstances in *Burrows v. State*, 961 So. 2d 701 (Miss. 2007). In that case, an indictment alleged that Horace Paul Burrows had committed sexual battery of the victim by digitally penetrating her, but the evidence showed that Burrows penetrated the victim with an object. *Id*. at 705-06 (¶¶12-15). The Supreme Court found that "[t]he variance between the language of the indictment . . . and the proof presented at trial was not a fatal error" because Burrows "was provided sufficient notice that he was being charged with the crime of sexual battery" and "his defense [that there was no form of sexual penetration at all] would still have been the same" regardless of whether he had been charged with digital penetration or penetration with an object. *Id*. at 706 (¶¶14-15).

¶21. Similarly, Blake's defense was that there was no inappropriate contact between him and John. Consequently, the variance between the indictment and the evidence at trial did not impact Blake's defense. In the light most favorable to the prosecution, there was evidence of sexual penetration, John's age, Blake's age, and Blake's status as John's great uncle. Thus, there was sufficient evidence to find Blake guilty of sexual battery of a child while in a position of trust or authority. *See* Miss. Code Ann. § 97-3-95(2) (Rev. 2014). We find no error based on this issue.

IV. Weight of the Evidence

¶22. Finally, for the same reasoning as in the previous issue, Blake claims the jury's verdict is contrary to the overwhelming weight of the evidence. In reviewing this issue, "we defer to the discretion of the trial judge, and we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." *Jackson*, 68 So. 3d at 720 (¶37) (internal quotation marks omitted). As we do not find that allowing the verdict to stand would sanction an unconscionable injustice, it follows that we find no merit to this issue, and the trial court did not err by denying Blake's request for a new trial.

¶23. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**